[No. C041029. Third Dist. Jan. 29, 2004.]

JOAN SCOTT, Plaintiff and Respondent, v.
METABOLIFE INTERNATIONAL, INC., Defendant and Appellant.

406

Counsel

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller and R. Gaylord Smith for Defendant and Appellant.

Robinson, Calcagnie & Robinson, Sharon J. Arkin, Mark P. Robinson, Jr.; Lopez, Hodes, Restaino, Milman, Skikos & Polos, Ramon R. Lopez, Steven J. Skikos; Andrews & Thornton, Anne Andrews and John Thornton for Plaintiff and Respondent.

OPINION

ROBIE, J.—Plaintiff Joan Scott sued Metabolife International, Inc., (Metabolife) for personal injuries she alleges she suffered after taking its product—Metabolife 356. Metabolife appeals the denial of its special motion to strike the complaint under Code of Civil Procedure section 425.16.[1] Metabolife contends the trial court erred in concluding section 425.16 did not apply. We conclude Scott's personal injury causes of action "arise from" Metabolife's act of manufacturing and selling of the allegedly defective product that caused Scott's injury, not from any act in furtherance of Metabolife's right of petition or free speech under the United States or California Constitutions. Scott also included a false advertising cause of action. We conclude Metabolife's

---

[1] These lawsuits are commonly referred to as strategic lawsuits against public participation or SLAPP lawsuits. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 71–72 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*City of Cotati*). Code of Civil Procedure section 425.16 is commonly referred to as the anti-SLAPP statute. (*City of Cotati*, at p. 72.) All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

for-profit advertising of the safety and efficacy of its product does not concern an issue of public interest under section 425.16. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### *The Complaint*

Boiled down to its essential relevant allegations, Scott's complaint claims she used Metabolife 356 and suffered a stroke as a direct result. From this kernel of relevant information, Scott alleges four personal injury causes of action, and one cause of action for false advertising: (1) strict products liability; (2) breach of express and implied warranties; (3) negligence; (4) deceit; and (5) unfair competition and false advertising in violation of Business and Professions Code sections 17200 and 17500.

### 1. *General Allegations*

More generally, in the "PARTIES, JURISDICTION AND VENUE" section of her complaint, Scott alleges Metabolife manufactures, distributes and sells dietary supplements, including Metabolife 356, to members of the public. Scott claims Metabolife 356 contains ephedrine and caffeine, which together can cause serious injuries. Scott alleges at the time of its manufacture and sale to Scott, Metabolife 356 was unsafe and defective to consumers using that product for its intended purposes because it contained these two compounds. Scott generally alleges the manufacturer knew this when they sold the product and further knew the product presented potentially a substantial and unreasonable risk of harm to consumers, including Scott. Scott purchased Metabolife 356 manufactured and sold by Metabolife.

In the "FACTUAL BACKGROUND" portion of her complaint, Scott alleges Metabolife misled users about the product and failed to adequately warn them about the potential serious dangers of the product they knew or should have known about. Scott alleges Metabolife markets Metabolife 356 by misrepresenting its efficacy, inducing millions of consumers to use it. Further, Metabolife represented Metabolife 356 increased energy, aided in diet and weight loss, and was a safe, natural metabolic enhancer that decreased fat, increased lean body mass, and increased energy during exercise.

Based on these representations of safety and efficacy, Scott purchased the product, read the label, and took it on a daily basis. Using the product in its intended and foreseeable manner, Scott then suffered a stroke as a direct

result of using Metabolife 356. Scott claims she was ignorant of the stroke risk associated with Metabolife 356. Had she known of the risks inherent in the product, she would not have taken the product.

Scott alleges Metabolife earned profits while concealing the potential hazards of the product from the public. Scott alleges Metabolife knew of the various potential dangers of Metabolife 356.

### 2. Causes of Action

#### a. Strict Liability

Scott's first cause of action is for strict liability. In the key allegation of this cause of action, Scott alleges Metabolife 356 is "unsafe and defective to consumers using said product for its advertised purposes and in a reasonably foreseeable manner" because the product contained ephedrine and caffeine. Scott asserts she sustained a stroke as a result of using this defective product. In addition to this, Scott alleges Metabolife knew its product was dangerous and failed to warn the public of the dangers of this product or to take steps to remedy the defects. Further, Scott alleges Metabolife knew Metabolife 356 would be used by consumers without their investigation of its advertising claims, and in reliance on those claims, those consumers took the product. Scott further alleges the failure of Metabolife to warn consumers was willful and wanton and justified the award of punitive damages.

#### b. Breach of Warranty

In her second cause of action for breach of express and implied warranties, Scott alleges Metabolife expressly and implicitly represented Metabolife 356 was safe, reasonably fit for its intended purpose and was of marketable quality, when, in fact, it was not. As a result of the breach of these warranties, Scott suffered personal injuries.

#### c. Negligence

In her third cause of action for negligence, Scott alleges Metabolife had a "duty not to unreasonably make and sell a potentially dangerous product and deliberately [withhold] issuing warnings" about it. Scott alleges Metabolife breached this duty by failing to warn of the dangers of Metabolife 356 and failed to provide adequate safeguards to prevent the injuries sustained by Scott. As a result of Metabolife's negligence, Scott was injured.

#### d. Deceit

In her fourth cause of action, Scott alleges: Metabolife deceived consumers, including her, by falsely representing Metabolife 356 was safe and the

product would "increase energy, reduce body fat and increase muscle mass." The labeling on the bottles fails to reveal the actual contents of the product. Metabolife falsely labeled the product as standardized. Metabolife's sales and marketing campaign for Metabolife 356 willfully deceived Scott and the general public about the health risks of the product. Metabolife suppressed the truth with the intent to mislead and defraud Scott knowing they would not use Metabolife 356 if they knew the truth. As a result of this conduct, Scott was injured.

### e. *False Advertising*

Finally, Scott's fifth cause of action alleges Metabolife violated Business and Professions Code sections 17200 and 17500 by the above actions. Specifically, Metabolife's conduct was false advertising in violation of certain specific Health and Safety Code provisions. Scott sought injunctive, restitutionary, and other equitable relief and attorney fees on behalf of the general public against Metabolife for this conduct.

As is evident from our description of Scott's complaint, it needlessly repeats the relevant charging allegations throughout its 13 pages. However, it does not stop there. Scott's complaint also contains a number of other allegations that are simply inconsequential fluff. It is these allegations that appear to have invited the instant section 425.16 motion like the wolf invited Little Red Riding Hood into grandma's house. Had plaintiff's counsel more carefully drafted the complaint, restricting it only to the facts relevant to each cause of action, counsel might have avoided this motion entirely.

For example, in the "INTRODUCTION," Scott alleges that in 1994 Congress deregulated the dietary supplement industry. Thus dietary supplements have appeared in supermarkets and grown into a $15 billion a year industry. Scott alleges manufacturers, including Metabolife, market these products without scientific testing for safety or efficacy. Further, Scott contends the industry does not maintain a comprehensive reporting system for adverse health effects associated with their products and consumers are not provided with reliable information about the products and specifically about Metabolife 356.

Scott also alleges the Food and Drug Administration (FDA) has received adverse health reports from consumers of these supplements that document death and disability from serious health conditions. Scott states the FDA commissioned a report that found the use of dietary supplements that contain PPA alkaloids were the probable cause of health conditions that in turn cause death and disability.

B

*Motion to Strike*

Metabolife brought a motion to strike Scott's complaint under section 425.16. Metabolife argued the lawsuit arose from its advertising, labeling, marketing, and promoting of its product and those advertising activities were constitutionally protected speech about an issue of public interest as defined by section 425.16. Thus, it argued Scott needed to establish a probability of success on the merits or her complaint should be stricken.

In support of its motion, Metabolife submitted documents showing the Metabolife 356 label which states, in part, "Natural Herbs Metabolife 356 Dietary Supplement," "Herbal formula to enhance your DIET and provide Energy" and "Independently Laboratory Tested For SAFETY." Further, Metabolife submitted documents concerning the Government Accounting Office and the FDA's discussion and potential regulation of dietary supplements containing ephedrine alkaloids. Metabolife also submitted materials supplied by the Ephedra Education Council and laws from other states concerning the regulation of the dosage levels of ephedrine.

Scott opposed the motion. Scott argued the focus and objective of her lawsuit was Metabolife's conduct in manufacturing and selling Scott an allegedly defective product. Scott also submitted documents in an attempt to establish a probability of success on the merits of her lawsuit.

The trial court denied Metabolife's motion. It ruled section "425.16 does not apply [to the first four causes of action for strict liability, breach of warranty, negligence, and deceit] since these causes of action arise out of [Scott's] ingestion of [Metabolife's] allegedly defective product, not out of [Metabolife's] constitutionally protected activities." As to the false advertising cause of action, the court ruled, "applying [section] 426.16 [*sic*] to advertising would be stretching the definition of that statute to it's [*sic*] outermost boundaries, which the court is not willing to do. However, even assuming that [section] 425.16 applies to advertising, the court finds that [Scott] has met her burden under the section to show a reasonable probability of success on this claim." Metabolife appeals.

DISCUSSION

I

*Application of Section 425.16*

Metabolife claims the trial court erred in denying its motion to strike because the trial court impermissibly concluded section 425.16 did not apply

to Scott's causes of action. As we shall explain, we conclude section 425.16 does not apply to Scott's personal injury causes of action because each cause of action arises from the manufacture and sale of a defective product, not Metabolife's constitutional right "of petition or of free speech." ■ We conclude section 425.16 does not apply to Scott's cause of action for false advertising because Metabolife's "speech" furthers only its own personal interest of selling its commercial product and hence does not concern an issue of public interest.

## A

### *The Language of Section 425.16*

Responding to the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," in 1992 the California Legislature enacted section 425.16. (§ 425.16, subd. (a).) The statute was intended "to encourage continued participation in matters of public significance" and to prevent the chilling of such participation "through abuse of the judicial process." (*Ibid.*)

Subdivision (b)(1) of section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Section 425.16, subdivision (e), defines the phrase " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include:

"(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law";

"(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law";

"(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest";

"(4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"Section 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. [Citation.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]. If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).) On appeal, we review an order denying a special motion to strike under section 425.16 de novo. (*Gallimore v. State Farm Fire & Casualty Ins.* Co. (2002) 102 Cal.App.4th 1388, 1396–1397 [126 Cal.Rptr.2d 560].)

B

*The "Arising From" Requirement*

Metabolife argues each of Scott's causes of action arises from its constitutionally protected right to engage in free speech. We disagree. As it relates to her four personal injury causes of action, the fundamental issue here is: Do these causes of action *"arise from* any act of" Metabolife in "furtherance of its right of petition or free speech?" The answer is no.

Our Supreme Court issued two opinions concerning section 425.16 that are relevant to our discussion. (*City of Cotati, supra,* 29 Cal.4th 69; *Navellier, supra,* 29 Cal.4th 82.)

In the first of these opinions, the court explicitly addressed the concept of "arising from." (*City of Cotati, supra,* 29 Cal.4th 69.) After the City of Cotati was sued in federal court concerning an ordinance it passed, it filed a lawsuit in state court addressing the same issues against the original plaintiffs in the federal action. (*Id.* at p. 72.) The *City of Cotati* court concluded the state court lawsuit arose out of the validity of the underlying ordinance, not from the constitutionally protected petitioning conduct of filing the prior federal action. (*Id.* at p. 80.) Thus, section 425.16 did not apply. (*Ibid.*)

In explaining the concept of "arising from" as it is used in section 425.16, the court explained, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. [Section 425.16] cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.]" (*City of Cotati, supra,* 29 Cal.4th at pp. 76–77.) Rather, the court concluded the trial court must focus on "the substance of"

the lawsuit to determine whether it arose from the defendant's protected activities. (*Id.* at p. 78.) Thus, it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAP statute applies. (*Id.* at p. 79.) The court held, "In short, the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] . . . [T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]" (*Id.* at p. 78.)

In *Navellier*, the plaintiff sued the defendant alleging defendant had committed fraud in connection with a settlement agreement that settled a prior lawsuit and further alleging defendant breached the agreement. (*Navellier, supra,* 29 Cal.4th at p. 82.) The Supreme Court concluded the plaintiff's causes of action arose from the constitutionally protected petitioning conduct of the filing of the prior lawsuit and thus section 425.16 applied. (*Navellier, supra,* 29 Cal.4th at p. 90.) In addressing the plaintiffs' argument that this garden-variety contract/fraud action could not fall within section 425.16, the Supreme Court stated, "Nothing in the statute itself categorically excludes any particular type of action from its operation." (*Navellier, supra,* 29 Cal.4th at p. 92.) The court further explained, "The logical flaw in plaintiff's argument is its false dichotomy between actions that target 'the formation or performance of contractual obligations' and those that target 'the exercise of the right of free speech.' [Citation.] A given action, or cause of action, may indeed target both. As the facts in this lawsuit illustrate, conduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning. [Section 425.16's] definitional focus is not the form of the plaintiff' s cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier, supra,* 29 Cal.4th at p. 92.)

▮ Where both constitutionally protected and unprotected conduct is implicated by a cause of action, a plaintiff may not "immunize" a cause of action challenging protected free speech or petitioning activity from a special motion under section 425.16 by the artifice of including extraneous allegations concerning nonprotected activity. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906].) Thus, when allegations of nonprotected activity are incidental or collateral to a plaintiff's claim challenging primarily the exercise of the rights of free speech or petition, they may be disregarded in determining whether the cause of action arises from protected activity. Conversely, if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion. (See *Paul v. Friedman* (2002)

95 Cal.App.4th 853, 866 [117 Cal.Rptr.2d 82] [anti-SLAPP statute does not provide protection to suits arising from any act having "any connection, however remote, with [protected conduct]"].)

## C

### *Personal Injury Causes of Action*

With this framework in place, we analyze Scott's first four causes of action for personal injury. Scott's cause of action for false advertising is a horse of a different color and is treated separately under part D, *post.*

Scott's first cause of action is for strict liability. " '[A] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' " (*Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 994 [281 Cal.Rptr. 528, 810 P.2d 549].) The elements of this cause of action are as follows: "(1) the product is placed on the market; (2) there is knowledge that it will be used without inspection for defect; (3) the product proves to be defective; and (4) the defect causes injury to a human." (*McCreery v. Eli Lilly & Co.* (1978) 87 Cal.App.3d 77, 83 [150 Cal.Rptr. 730], disapproved on other grounds in *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588, 614–615 [163 Cal.Rptr. 132, 607 P.2d 924], as stated in *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 816 [107 Cal.Rptr.2d 369, 23 P.3d 601].)

Here, Scott alleges Metabolife manufactured Metabolife 356, that product was defective, and caused Scott personal injuries in the form of a stroke.

Turning to the negligence cause of action, our Supreme Court has explained, "the plaintiff in order to recover in strict liability in tort must prove that he was injured by a defect in the product and that the product was defective when it left the hands of the retailer or manufacturer; whereas to recover in negligence the plaintiff must prove the same two elements plus an additional element, namely, that the defect in the product was due to negligence of the defendant." (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 383 [93 Cal.Rptr. 769, 482 P.2d 681].)

Scott alleges Metabolife had a duty not to unreasonably make and sell a potentially dangerous product and withhold warnings about the product. As a result of its negligence and breach of that duty, Metabolife 356 injured Scott.

The essential elements of a warranty cause of action are: "1. There was a sale of goods; the defendant was the seller, and plaintiff a buyer; [¶] 2. Defendant [expressly] [or] [impliedly] warranted the goods sold; [¶] 3. There

was a breach of warranty; [and] [¶] 4. The breach of warranty caused plaintiff to suffer injury, damage, loss or harm[.] [; and] [5. The plaintiff gave defendant timely notice of the breach of warranty.]" (BAJI No. 9.40.)

Here, Scott alleges Metabolife expressly and impliedly warranted Metabolife 356 was safe, fit for its intended purpose, and of marketable quality. As a result of Metabolife's failure to produce a product that met these warranties, Scott was injured.

For a cause of action of deceit, the rule has been stated as follows: " 'A manufacturer or seller of an article which is not inherently dangerous, but which is rendered dangerous by a defect therein, is liable for an injury to a third person arising from the defect, where he had knowledge of the defect and of the danger, and failed to give notice or warning thereof to the purchaser, or concealed the defect, or represented the article to be safe and sound, or, in other words, was guilty of fraud or deceit.' " (*Youtz v. Thompson Tire Co.* (1941) 46 Cal.App.2d 672, 675 [116 P.2d 636].)

Scott alleges Metabolife manufactured and marketed a defective product. Metabolife both concealed its inherent dangers and affirmatively misrepresented the product was safe. This defective product proximately caused her injuries.

We reject Metabolife's characterization of this lawsuit as based upon its advertising or "commercial speech." This speech is not the gravamen or principal thrust of Scott's complaint. As should be evident by our description of the conduct Scott alleges in each of these personal injury causes of action, Scott does not seek redress for that advertising. In fact, Metabolife's advertising itself caused Scott no injury at all. That advertising is unrelated to and distinct from the injury-causing conduct by Metabolife upon which Scott's personal injury causes of action are based. Rather, Scott seeks redress for her own personal injuries because Metabolife manufactured and sold her a defective product that injured her. For purposes of section 425.16, each of Scott's four causes of action is *based upon* Metabolife's act *of manufacturing and selling the defective product that caused Scott's injury*. It is this act of manufacturing and selling the defective product that underlies each one of these causes of action.

■ It is true Metabolife's commercial speech has some relevance here, especially in the breach of express warranty and fraud theories of recovery. The mere fact Scott's lawsuit followed the advertising and marketing of Metabolife 356, however, does not establish that the lawsuit arose from that advertising. (*City of Cotati, supra,* 29 Cal.4th at pp. 76–77.) Even though these causes of action require the proof of some speech, the core of these causes of action is

that the product did not conform to the warranties and statements made by Metabolife. Thus, the wrongful injury-producing conduct on which these claims are based arises from the nature of the defective product. A manufacturer does not engage in activities protected by the First Amendment when it produces a product that does not meet its warrantied or represented characteristics. We conclude Metabolife's advertising is merely incidental to the manufacturing and sales conduct that are the basis for these causes of action. Because the speech is not the gravamen of these causes of action, we conclude the protections of section 425.16 do not apply here.[2]

Moreover, in arguing Scott's causes of action arise out of its protected advertising activities, Metabolife confuses the method of proof Scott will use to demonstrate its product is defective with Metabolife's conduct from which these causes of action arise.

In *Gallimore v. State Farm Fire & Casualty Ins. Co.*, plaintiff sued defendant insurance company for unfair business practices in violation of Business and Professions Code section 17200 based on a Department of Insurance investigation that examined 825 claim files and found violations in nearly 50 percent of them. (*Gallimore v. State Farm Fire & Casualty Ins., supra*, 102 Cal.App.4th at p. 1392.) The appellate court concluded the plaintiff's causes of action arose out of the underlying claims-handling violations, not any communication between defendant and the Department of Insurance about the claims process. (*Id.* at p. 1399.) Defendant argued its communications with the Department of Insurance were protected communications, and allowing the plaintiff to rely on them to prosecute the action interfered with its rights to communicate with that department. (*Ibid.*) The court retorted, " This contention confuses [defendant's] allegedly *wrongful acts* with the *evidence* that plaintiff will need to prove such misconduct. Plaintiff seeks no relief from [defendant] for its communicative acts, but rather for its alleged mistreatment of policyholders and its related violations and evasions of statutory and regulatory mandates." (*Ibid.*)

Similarly here, Scott does not seek redress from Metabolife for its communicative conduct. That is not the thrust or gravamen of these causes of action. Instead, Scott seeks redress for the personal injuries she suffered as a result of Metabolife's manufacture of what she contends is a defective product. To the extent that Metabolife's labels and advertising are relevant, they are merely means of demonstrating the product was defective because

---

[2] We note Division One of the Fourth District Court of Appeal came to the same conclusion in *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189–191 [6 Cal.Rptr.3d 494]. In *Martinez*, a petition for review was filed on December 22, 2003, S121358. The Supreme Court has not yet acted on that petition.[*]

---

[*]Reporter's Note: The Supreme Court denied review on February 24, 2004.

appropriate warnings were not issued with the product.[3] In this sense, Metabolife confuses the evidence necessary to establish its product was defective from the conduct that this lawsuit arises from.

We therefore conclude Scott's personal injury causes of action do not arise from Metabolife's protected activities. Section 425.16 has no application here.

D

*Unfair Competition/False Advertising Cause of Action*

As should be self-evident, there is a difference between Scott's personal injury causes of action and her fifth cause of action for unfair business practices and false advertising. We address this cause of action separately because it squarely addresses Metabolife's "speech," but we conclude commercial speech about the safety of a product by the manufacturer of that product for the purposes of the sale of the product does not constitute an issue of public interest for purposes of section 425.16.

### 1. *Combination of False Advertising with Allegations of Unfair Competition*

As an initial matter, Scott argues her cause of action for unfair competition and false advertising does not arise from any constitutional right of Metabolife to free speech or to petition because the cause of action arises from the manufacture of a defective product, which in and of itself constitutes unfair competition.[4] Regardless of whether a portion of that cause of action is viable under the products liability theory, in that same "unfair business practices" cause of action Scott also asserts Metabolife has engaged in "false advertising" in violation of Business and Professions Code section 17500, as well as other Health and Safety Code sections.

---

[3] In a strict liability case, a plaintiff can establish a product has a design defect by establishing " 'the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.' " (*Morton v. Owens-Corning Fiberglas Corp.* (1995) 33 Cal.App.4th 1529, 1534 [40 Cal.Rptr.2d 22].) Alternatively, the plaintiff can demonstrate " 'that the risk of danger inherent in the challenged design outweighs the benefits of such design.' " (*Ibid.*) A third method of proving a product is defective is that the manufacturer failed to warn or gave inadequate warnings about its products. (*Ibid.*, fn. 7.)

[4] See *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105–1106 [53 Cal.Rptr.2d 229] (common law torts may support an unfair business practice cause of action under § 17200); but see *Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 969 [69 Cal.Rptr.2d 623] ("While these doctrines [i.e., strict liability and warranty liability] do provide for civil liability upon proof of their elements they do not, by themselves, describe acts or practices that are illegal or otherwise forbidden by law [under Business & Professions Code section 17200]").

■ As we have already noted, when we are faced with a cause of action that involves both constitutionally protected and unprotected conduct, we must examine the "substance of" or "gravamen" of each cause of action to determine whether section 425.16 applies in the first instance. (*City of Cotati, supra*, 29 Cal.4th at pp. 78–79.) "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.' " (*Fox Searchlight Pictures, Inc. v. Paladino, supra*, 89 Cal.App.4th at p. 308.) Where the allegations of constitutionally protected activity are not merely "incidental" to the unprotected conduct, the protections of section 425.16 are implicated.

Here, the gravamen of the fifth cause of action is Metabolife's false advertising conduct. Unlike the personal injury causes of action, which only deal with Scott and her personal injuries, we may not conclude the "speech" activities identified in the fifth cause of action are merely incidental to this cause of action. Rather, we must tackle head on whether section 425.16 applies to this false advertising cause of action.

### 2. *Does Section 425.16 apply to "False" Advertising?*

Scott urges us to hold section 425.16 does not apply to Metabolife's "false advertising" because false advertising "*is not constitutionally protected.*" We reject this argument.

In *Navellier*, the plaintiff argued the defendant was not entitled to the protections provided by section 425.16 because its petitioning activities were not " 'valid' " and hence not constitutionally protected. (*Navellier, supra*, 29 Cal.4th at p. 94.) The court responded, "That the Legislature expressed a concern in the statute's preamble with lawsuits that chill the valid exercise of First Amendment rights does not mean that a court may read a separate proof-of-validity requirement into the operative sections of the statute. [Citations.] Rather, any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' [Citation.]" (*Ibid.*)

As explained by another court, "The same argument could be made by the plaintiff in a defamation suit—the defendant has no First Amendment right to engage in libel or slander. Yet, defamation suits are a prime target of SLAPP motions. [¶] . . . The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are

constitutionally protected under the First Amendment as a matter of law. If this were the case then the inquiry as to whether the plaintiff has established a probability of success would be superfluous." (*Fox Searchlight Pictures, Inc. v. Paladino, supra*, 89 Cal.App.4th at p. 305, fn. omitted.)

█ Similarly here, Scott cannot simply allege this advertising is false and therefore exempt from the application of section 425.16. When a cause of action arises from constitutionally protected speech, section 425.16 applies and the question of whether the speech is false must be examined when plaintiff demonstrates a probability of success on the merits.

### 3. *A Manufacturer's Advertising of its Product does not Concern an Issue of Public Interest*

As noted above in part IA, *ante,* in order for section 425.16 to apply, the defendant must demonstrate the conduct from which the lawsuit arises falls within one of the categories described in subdivision (e) of that section. For purposes of this appeal, we shall assume, for argument's sake, commercial advertising is free speech protected by the First Amendment and hence falls within the conduct described in section 425.16, subdivision (e)(3) or (e)(4). (See *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 952 [119 Cal.Rptr.2d 296, 45 P.3d 243] [commercial speech is entitled to some constitutional protection].) However, as we shall explain, the advertising at issue in this case—a manufacturer's advertising of a specific consumer product, on its labels, and to the public, for the purpose of selling that product—is not an issue of public interest (or a public issue)[5] as that phrase is used in section 425.16.

Section 425.16, subdivision (e) provides in pertinent part: "(e) As used in this section 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution *in connection with a public issue'* includes: . . . (3) any written or oral statement or writing made in a place open to the public or a public forum *in connection with an issue of public interest*; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest.*" (Italics added.)

There are three appellate cases that address whether commercial speech concerning the sale of a drug or an herbal supplement is an issue of public interest.

The first case is *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562 [92 Cal.Rptr.2d 755] *(DuPont)* where the court

---

[5] We shall refer to these two concepts as an issue of public interest in this opinion.

found advertising to be an issue of public interest. In *DuPont,* the plaintiffs filed a class action lawsuit against the manufacturer of the drug Coumadin. (*Id.* at p. 564.) The complaint alleged the manufacturer artificially inflated the price of the drug by disseminating false information concerning an alternative generic product both in connection with public advertising and in lobbying activities in the legislative arena.[6] (*DuPont* at p. 564.) The appellate court concluded section 425.16 applied to the manufacturer's advertising to doctors and the public because the statements were made " 'in connection with a public issue.' " (*DuPont* at pp. 566–567.) The court looked to the plaintiffs' complaint which stated: " 'More than 1.8 million Americans have purchased Coumadin, an anti-coagulant medication, for the prevention and treatment of blood clots that can lead to life-threatening conditions such as stroke and pulmonary embolism.' " Based on this allegation, the court concluded, "Both the number of persons allegedly affected and the seriousness of the conditions treated establish the issue as one of public interest." (*Id.* at p. 567.)

In *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 42–43 [134 Cal.Rptr.2d 420], the appellate court examined whether an unfair competition lawsuit brought against the manufacturer of an ephedrine-containing herbal supplement fell within the parameters of section 425.16. The substance of the plaintiff's lawsuit was that the label on the product falsely stated the product was "standardized for 6% ephedrine." (*Nagel* at p. 44.) Plaintiff brought suit for unfair competition and violations of the Consumer Legal Remedies Act asserting the defendant's label was false and misleading. (*Nagel* at p. 44) The *Nagel* court rejected defendant's argument its labels constituted speech in connection with an issue of public interest. (*Id.* at p. 47.) The court stated, "while matters of health and weight management are undeniably of interest to the public, it does not necessarily follow that all lists of ingredients on labels of food products or on the manufacturers' Web sites are fully protected from legal challenges by virtue of section 425.16. 'Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues.' [Citation.]" (*Ibid.*) Further, the court stated, "Here, the list of Ripped Fuel's ingredients on the bottle labels and on Twin Labs' Web site was not participation in the public dialogue on weight management issues; the labeling on its face was designed to further Twin Labs' private interest of increasing sales for its products. [Citation.] Twin Labs' commercial speech was not made 'in connection with a public issue' as that phrase is used in section 425.16." (*Id.* at pp. 47–48.)

---

[6] These legislative efforts fell within subdivision (e)(1) and (e)(2) of section 425.16 as statements made "before a legislative . . . proceeding" or as statements "made in connection with an issue under consideration or review by a legislative . . . body." None of Metabolife's "speech" alleged here involved subdivision (e)(1) or (e)(2).

The *Nagel* court distinguished its facts from those of *DuPont* because the speech in *DuPont* was "inextricably intertwined with speech providing medical information to the consuming public and medical doctors, and with speech furthering its political lobbying activities. Here, the list of ingredients on the packaging of the product and on Twin Lab's Web site is not intertwined, much less inextricably so, with any noncommercial speech." (*Nagel v. Twin Laboratories, Inc., supra*, 109 Cal.App.4th at p. 50.)

The next case to address this question is *Consumer Justice Center v. Trimedica International, Inc.,* (2003) 107 Cal.App.4th 595 [132 Cal.Rptr.2d 191] (*Consumer Justice Center*). In this case, the plaintiff sued the manufacturer of the product Grobust which claimed its product offered " 'The All-Natural Way To A Fuller, More Beautiful Bust!' " (*Id.* at pp. 598–599.) The plaintiff asserted this claim constituted false advertising, consumer fraud, and asserted related claims under the Consumer Legal Remedies Act (Civ. Code, § 1770, subd. (a)(5)) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). (*Consumer Justice Center* at p. 599.) The manufacturer responded to the lawsuit with a motion to strike under section 425.16. (*Consumer Justice Center* at p. 599.) The trial court denied the motion. The appellate court affirmed. (*Id.* at p. 598.)

The *Consumer Justice Center* court examined whether these advertising statements about the defendant's product constituted an "issue of public interest" as required by subdivision (e)(3) and (e)(4) of section 425.16. (*Consumer Justice Center, supra*, 107 Cal.App.4th at p. 600.) In rejecting the defendant's argument that the subject of "herbal dietary supplements" is the subject of public interest, the court concluded the topic of the lawsuit was not herbal medicine in general, but rather this manufacturer's misrepresentations about the specific properties and benefits of this specific product. (*Id.* at p. 601.) This is not a matter of public interest. (*Ibid.*) The court concluded, "The stated intent of the anti-SLAPP statute is 'to encourage continued participation in matters of public significance.' (§ 425.16, subd. (a).) No logical interpretation of this statement suggests that 'matters of public significance' include specific advertising statements about a particular commercial product, absent facts which truly make that product a matter of genuine public interest, as was the case in *DuPont*. If we were to do so, nearly any product could claim its speech was about a topic of public interest. Construing the statute in this manner would allow every defendant in every false advertising case (or nearly any case that involves any type of speech) to bring a special motion to strike under the anti-SLAPP statute, even though it is obvious that the case was not filed for the purpose of chilling participation in matters of public interest." (*Consumer Justice Center, supra*, 107 Cal.App.4th at p. 602.)

The *Consumer Justice Center* court distinguished the *DuPont* case, concluding, "Grobust does not treat life-threatening conditions such as stroke

and pulmonary embolism, nor is there evidence it is widely used. Therefore, Grobust does not qualify as a matter of public interest by examining either 'the number of persons allegedly affected' or 'the seriousness of the conditions treated. . . .' [Citation.]" (*Consumer Justice Center, supra,* 107 Cal.App.4th at p. 602.)

■ We disagree with *Consumer Justice Center's* analysis of the *DuPont* case that simply because a lawsuit affects a large number of consumers and involves a life-threatening illness, it will satisfy the public interest requirement of the statute. If we were to conclude that was all that was necessary, our conclusion would produce the anomalous result of giving more protection to advertisers who threaten a larger segment of the public with a more deadly problem. This cannot be the purpose of a statute that was designed "to encourage continued participation in matters of public significance, and [ensure] that this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).)

We conclude the nature of the speech in *DuPont, supra,* 78 Cal.App.4th at pages 564–565, distinguishes it from this case and from *Consumer Justice Center, supra,* 107 Cal.App.4th page 599, and from *Nagel v. Twin Laboratories, Inc., supra,* 109 Cal.App.4th at page 44. In *DuPont, supra,* 78 Cal.App.4th at pages 564–565, the manufacturer was disseminating false information about a competing generic product, not simply its own product. It was not promoting the safety and effectiveness of its own product to the consuming public.

Here, Scott's cause of action does not challenge any statements by Metabolife concerning obesity or weight management in general, or the general topic of ephedrine, or statements about other manufacturer's products. There is nothing in Scott's complaint that suggests it seeks to address any advertising that provides medical advice to the consuming public. Rather, Scott's cause of action for false advertising is based on advertising by a manufacturer (Metabolife) about the safety and efficacy of its specific weight loss product (Metabolife 356) for the profit-generating purpose of selling that product to the consuming public. This concerns Metabolife's private interest of increasing sales for its products. This cause of action does not concern an issue of public interest as that term is used in section 425.16. To the extent the *DuPont* case could be construed as contrary to this conclusion, we respectfully decline to follow it. Because the "issue of public interest" requirement of subdivision (e) of section 425.16 is not present here, section 425.16 does not apply to Scott's cause of action for false advertising.[7]

---

[7] Between the trial court's ruling and the time this matter came on for oral argument, the Legislature passed, and the Governor signed legislation that exempted certain causes of action from the application of the anti-SLAPP statute. (§ 425.17, added by Stats. 2003, ch. 338.) In

## DISPOSITION

The court's order is affirmed. Scott shall recover her costs on appeal. (Cal. Rules of Court, Rule 27(a).)

Sims, Acting P. J., and Davis, J., concurred.

---

the new statute, the Legislature declared, "that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process or Section 425.16." (§ 425.17, subd. (a).)

In line with this legislative finding, subdivision (c) of section 425.17 provides, in relevant part: "Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods . . . arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's . . . goods . . . that is made for the purpose of . . . promoting . . . sales . . . of . . . the person's goods . . . or the statement or conduct was made in the course of delivering the person's goods or services. [¶] (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . ."

Pursuant to Government Code section 68081, we invited the parties to submit supplemental briefing on the application of this statute to this case. Because we conclude none of the causes of action at issue here fall within the anti-SLAPP statute's purview, we decline to address whether this new statute applies to the causes of action asserted in this case. We further decline to address Metabolife's argument this new statute is unconstitutional.