Filed 7/1/14 (unmodified opinion attached)
### *CERTIFIED FOR PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| TAMAR ORICHIAN, | B244531 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GC047437) |
| v. | |
| BMW OF NORTH AMERICA, LLC, | ORDER MODIFYING OPINION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 12, 2014, is modified as follows:

On page 9, footnote 6, delete footnote 6 in its entirety and replace with:

CACI is the acronym used to identify the jury instructions prepared by the Judicial Council of California Advisory Committee on Civil Jury Instructions and submitted by the Committee to and approved by the Judicial Council for use in civil jury cases.

***CERTIFIED FOR PUBLICATION***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| TAMAR ORICHIAN, | B244531 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GC047437) |
| v. | |
| BMW OF NORTH AMERICA, LLC, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County,

Jan A. Pluim, Judge. Affirmed.

Krohn & Moss and Jennifer Basola for Plaintiff and Appellant.

RoganLehrman, Kate S. Lehrman and Robert A. Philipson for Defendant and

Respondent.

Tamar Orichian purchased a new 2007 BMW X5 automobile from a BMW dealership. BMW of North America, LLC, expressly warranted the vehicle against defects in materials or workmanship, agreeing to repair or replace any defective parts. Plaintiff filed a complaint for breach of warranty under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) (Song-Beverly)[1] and the federal Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.) (Magnuson-Moss) alleging that defendant failed to repair certain defects after several attempts. The trial court concluded that plaintiff's count for breach of express warranty under Song-Beverly supplanted her count for breach of written warranty under Magnuson-Moss and instructed the jury on a single count for breach of express warranty under Song-Beverly. The jury returned a defense verdict.

Plaintiff contends her count for breach of written warranty under Magnuson-Moss is not limited or supplanted by Song-Beverly, and the refusal of her proposed instructions under Magnuson-Moss was prejudicial error. We conclude that the refusal of her proposed instructions was error, but we conclude on this record that the error was nonprejudicial. We therefore will affirm the judgment.

---

[1]    Song-Beverly is popularly known as the lemon law.

## *FACTUAL AND PROCEDURAL BACKGROUND*

1.    *Factual Background*

Plaintiff purchased a new BMW X5 from a BMW dealership in August 2007.[2] Defendant provided a written limited warranty for a period of 48 months or 50,000 miles, whichever occurred first.  The limited warranty stated that defendant "warrants 2007 U.S. specification X5 SAVs . . . against defects in materials or workmanship . . . . "  Defendant agreed to repair or replace any such defective part within a reasonable time provided that plaintiff took the vehicle to an authorized service center upon the discovery of the defect.

Plaintiff experienced several problems with the car and drove it to a dealership for warranty service on several occasions.[3]  The gear shift handle came loose and was replaced in November 2008, at 19,099 miles.  The gear shift knob came apart and was replaced in August 2009.  On that same visit, leather trim that was separating from the glove compartment was replaced.

Plaintiff presented the car to a dealership in January 2010, at 30,632 miles, and again in February 2010 complaining of loud bearing noises coming from the engine area when the engine was started cold and the car's failure to connect with her phone.  The phone problem was resolved, and the alternator drive belt and tensioner were replaced,

---

[2]    Plaintiff purchased the car for personal and business use in her own name and the name of her former company, Security Ticketing Corporation.

[3]    Although we refer to plaintiff, on several occasions it was actually plaintiff's brother or husband who drove the car to the dealership and picked it up after servicing.

which seemed to eliminate the noises. Plaintiff also complained that the leather steering wheel cover was peeling, so the cover was replaced. She returned in March 2010 complaining of similar bearing noises when accelerating at high speeds and a different rattling noise when driving on bumpy roads. She left the car with the dealership for a period of time and was told that the mechanics had found nothing wrong and that she should return later for further diagnosis.

Plaintiff returned in April 2010 complaining of bearing noises and a weak battery. The dealership replaced the power steering pump and performed other repairs to the steering and air conditioning systems, and plaintiff's husband later replaced the battery. She returned in early June 2010 because a door lock was malfunctioning and the car alarm would go off for no good reason. The dealership performed repairs. She returned in late June 2010, at 33,183 miles, complaining of the same rattling noise that she had experienced earlier. The dealership identified loose parts and secured them.

Plaintiff returned in July 2010 complaining that she heard noises when steering far to either side. The dealership performed some repairs, but she returned one week later with the same complaint. She also complained of an electrical short noise and a burning odor emanating from the back of the car. The dealership was unable to duplicate the reported problems and performed no repairs at that time.

Plaintiff returned in August 2010, at 34,391 miles, complaining that she continued to hear the same bearing noises when she turned on the engine and when she accelerated. When she picked up the car, the problem was not resolved. She decided to park the car and not use it after that date because she was concerned about safety,

4

although she and her brother continued to drive the car occasionally. Her husband disconnected the car battery.

Plaintiff, through her counsel, sent a letter to defendant in January 2011 revoking her acceptance of the vehicle and demanding the return of all funds paid toward the purchase, plus attorney fees. She submitted a claim to arbitration pursuant to a provision in the warranty booklet. The arbitrator decided in April 2011 that defendant had complied with the warranty in a complete and timely manner.

Plaintiff returned to the dealership in May 2011, at 37,168 miles, complaining that the car would not start without a jump start and that the check engine light was illuminated. The dealership determined that the battery was dead and replaced it. Plaintiff also complained that the steering had become very heavy. She claims that she continued to experience problems after May 2011, including bearing noises, rattling noises, steering noises, and alarm problems, but she did not return to the dealership.

Plaintiff stopped driving the car in August 2011. She claims that she was dissatisfied and uncomfortable with the unresolved and recurring problems.

2. *Complaint*

Plaintiff filed a complaint against defendant in May 2011 alleging counts for (1) breach of written warranty under Magnuson-Moss; (2) breach of implied warranty under Magnuson-Moss; (3) breach of express warranty under Song-Beverly; and

5

(4) breach of implied warranty of merchantability under Song-Beverly.[4] She sought damages under Commercial Code section 2714 or restitution of the purchase price in her first count. She sought restitution of the purchase price, damages, and a civil penalty in her third count.

### 3. *Trial and Judgment*

A jury trial commenced in July 2012. Plaintiff and her husband, a mechanic who drove the car less frequently than plaintiff, both testified that they heard unusual noises, but there was no evidence of any problem with the vehicle's driving performance. There also was no evidence of any collision, misuse, or unauthorized repairs.

Plaintiff's automotive service expert, Jackie Winters, testified that he inspected and test drove the vehicle in July 2011 and detected a rattling noise and another metallic sound coming from the engine. He made a video and audio recording of the engine running, which was played for the jury. Winters testified that the repairs performed to address the noises reported by plaintiff were not effective repairs to correct those problems. He testified that the noises came from inside the engine and that the mechanics should have removed the valve cover, and perhaps other engine parts, to check inside the engine, but according to the service records they failed to do that.[5] Although he did not remove any engine parts so as to identify the source of the problem,

---

[4]    Both Orichian and Security Ticketing Corporation are named as plaintiffs in the complaint despite the fact that Orichian sold the company several years before filing the complaint. The proper plaintiff is Orichian alone.

[5]    Winters testified on cross-examination that he detected no abnormal steering or suspension noises and that there was nothing wrong with the steering and suspension.

6

Winters stated his opinion that the engine noises indicated that the engine was defective and should be replaced. He testified that a new engine would cost $29,716 and that the labor to replace the engine would cost $4,500.

Nathan Hood, who was employed by defendant as a regional technical engineer, testified that the engine was closely monitored by sensors, including noise sensors, that would record any faults. He testified that the absence of any recorded engine faults at any time was a strong indication that there was no mechanical problem with the engine. He testified that he inspected the vehicle shortly before the trial date, test drove it, ran a diagnostic test, and reviewed the repair records. He stated his opinion that there was no defect in materials or workmanship and that he was "a hundred percent positive, no doubt in my mind there is absolutely nothing wrong with the engine." He testified that the engine sounded normal and that there were no abnormal noises of any kind.

Anthony Hawkins, the shop foreman at the BMW dealership, testified that he personally inspected the vehicle in January 2010 and determined at that time that the bearing noise that plaintiff reported hearing on cold starts was caused by an alternator belt tensioner and idler pulley. Replacement parts were ordered and installed on a subsequent visit, and Hawkins determined that the problem was resolved. He testified that he inspected the vehicle again in March 2010 and determined that a different bearing noise that plaintiff reported hearing when driving at a high RPM, particularly after cold starts, was caused by a faulty power steering pump. A replacement part was ordered and installed on a subsequent visit, and he determined that the noise went away. He also testified on the work performed and repair records from later visits, and stated

that he could not detect the electrical smell that plaintiff had complained about or the rattling or steering noises.

The trial court granted defendant's motion for nonsuit against the implied warranty counts.

Plaintiff proposed special instruction No. 27 on breach of written warranty under Magnuson-Moss, stating:

"Plaintiff claims that she was harmed by BMW of North America, LLC's violation of its Written Warranty under the Magnuson-Moss Warranty Act. To establish this claim, Plaintiff must prove all of the following:

"1. That BMW of North America, LLC provided Plaintiff with a written warranty for the vehicle;

"2. That Plaintiff delivered the vehicle to BMW of North America, LLC or its authorized repair facilities to repair a defect in the vehicle; and

"3. That BMW of North America, LLC or its authorized repair facilities failed or refused to repair the vehicle after a reasonable number of attempts, or after being afforded a reasonable opportunity to do so."

Plaintiff also proposed special instruction No. 34, based on Commercial Code section 2714, stating that the measure of damages for such a breach of written warranty was "The difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

The trial court refused both special instructions, stating that the CACI[6] instructions on breach of express warranty under Song-Beverly "adequately cover what we need to cover" and that Magnuson-Moss "seems to be supplanted by California law." The court gave CACI Nos. 3201, 3202, 3204, and 3241 relating to breach of express warranty under Song-Beverly. Under the instructions given, plaintiff sought to recover the purchase price paid less the value of use. The instructions required plaintiff to prove the existence of a defect covered by the warranty that a reasonable person in plaintiff's situation would believe "substantially impaired [the vehicle's] use, value or safety."[7] The jury answered "no" to the question whether the vehicle had such a defect.[8] The trial court entered a judgment on the jury verdict in August 2012 awarding plaintiff no relief.

4.      *New Trial Motion and Appeal*

Plaintiff moved for a new trial challenging the trial court's refusal to separately instruct the jury on her count for breach of written warranty under Magnuson-Moss.

---

[6]      CACI refers to the Judicial Council of California Advisory Committee on Civil Jury Instructions and identifies instructions which have been prepared by the Committee and submitted to and approved by the Judicial Council for use in all civil jury cases.

[7]      The trial court instructed that in deciding whether a reasonable person would believe that any defect substantially impaired the vehicle's use, value, or safety, the jury "may consider, among other factors, the following:  (a) the nature of the defect or defects; (b) the cost and length of time required for repair; (c) whether past repair attempts have been successful; (d) the degree to which the vehicle could be used while awaiting repair; and (e) the availability and cost of comparable transportation during the repairs."

[8]      The jury returned a verdict after deliberating for approximately one hour. Eleven jurors answered "no" to the question, and one was undecided.

The court denied the motion, stating that plaintiff had failed to propose appropriate instructions under Magnuson-Moss "if in fact such Act is applicable herein." Plaintiff timely appealed the judgment.

***CONTENTIONS***

Plaintiff contends the trial court erred by failing to separately instruct the jury on her count for breach of written warranty under Magnuson-Moss.

***DISCUSSION***

1. *Plaintiff's Remedies Are Not Limited to Song-Beverly*

Magnuson-Moss governs warranties for consumer products distributed in interstate commerce. It requires disclosures in connection with written warranties, regulates the substantive content of warranties, and establishes a federal cause of action for breach of a written or an implied warranty (15 U.S.C. § 2310(d)), among other provisions. Magnuson-Moss does not substitute federal law for state law of consumer product warranties, but instead supplements state law. (*Walsh v. Ford Motor Co.* (D.C. Cir. 1986) 807 F.2d 1000, 1012-1014.) "Magnuson-Moss 'calls for the application of state written and implied warranty law, not the creation of additional federal law,' except in specific instances in which it expressly prescribes a regulating rule. [Citation.]" (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 833, quoting *Walsh*, *supra*, 807 F.2d at p. 1012.)

The Commercial Code governs warranties in the sale of goods. Section 2313, subdivision (1)(a) states, "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates

10

an express warranty that the goods shall conform to the affirmation or promise."  The

buyer must notify the seller of any nonconformity within a reasonable time of its

discovery.  (Com. Code, § 2607, subd. (3)(A).)  "The measure of damages for breach of

warranty is the difference at the time and place of acceptance between the value of the

goods accepted and the value they would have had if they had been as warranted, unless

special circumstances show proximate damages of a different amount."  (*Id.*, § 2714,

subd. (2).)  "In a proper case any incidental and consequential damages under

Section 2715 also may be recovered."  (*Id.*, subd. (3).)

Song-Beverly governs warranties for consumer goods.  Civil Code

section 1791.2, subdivision (a)(1) states that an "express warranty" means "A written

statement arising out of a sale to the consumer of a consumer good pursuant to which

the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or

performance of the consumer good or provide compensation if there is a failure in utility

or performance."  The buyer must deliver nonconforming goods to the manufacturer's

service and repair facility.  (*Id.*, § 1793.2, subd. (c).)  If the manufacturer or its

representative fails to service or repair a new motor vehicle to conform to an express

warranty after a reasonable number of attempts, the manufacturer must either replace

the new motor vehicle or make restitution to the buyer.  (*Id.*, subd. (d).)  A defect or

nonconformity for purposes of Song-Beverly is defined as "a nonconformity which

substantially impairs the use, value, or safety of the new motor vehicle to the buyer or

11

lessee."[9]  (*Id.*, § 1793.22, subd. (e)(1).)  A buyer who is damaged by the failure to comply with an express warranty may bring an action for damages and other legal and equitable relief.  (*Id.*, § 1794, subd. (a).)

Song-Beverly states, "The provisions of this chapter shall not affect the rights and obligations of parties determined by reference to the Commercial Code except that, where the provisions of the Commercial Code conflict with the rights guaranteed to buyers of consumer goods under the provisions of this chapter, the provisions of this chapter shall prevail."  (Civ. Code, § 1790.3.)  Civil Code section 1790.4 states, "The remedies provided by this chapter are cumulative and shall not be construed as restricting any remedy that is otherwise available, and, in particular, shall not be construed to supplant the provisions of the Unfair Practices Act."  Citing these provisions, the California Supreme Court in *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990, stated that Song-Beverly "makes clear its pro-consumer remedies are in addition to those available to a consumer pursuant to the Commercial Code (Civ. Code, § 1790.3) and the Unfair Practices Act (Civ. Code, § 1790.4)."

Magnuson-Moss defines a "written warranty" as "(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet

---

[9]     Neither Magnuson-Moss nor the Commercial Code requires proof that a defect substantially impairs the use, value, or safety of a vehicle in order to establish a breach of an express or written warranty, as required under Song-Beverly.

12

a specified level of performance over a specified period of time, or (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." (15 U.S.C. § 2301(6).) It is undisputed that the limited warranty here constitutes a written warranty under (B) above.

Plaintiff sought to establish a breach of the limited warranty and sought remedies under Song-Beverly, Magnuson-Moss, and the Commercial Code. She sought to establish the existence of a nonconformity under Song-Beverly so as to recover the amount paid toward purchasing the vehicle less the value of her use pursuant to Civil Code section 1793.2, subdivision (d). She also sought to establish a breach of a written warranty under Magnuson-Moss so as to recover damages pursuant to Commercial Code section 2714, subdivision (2) and attorney fees under the federal act (15 U.S.C. § 2310(d)(2)).

The trial court concluded that California law "supplanted" Magnuson-Moss and that defendant's liability for breach of the limited warranty must be established exclusively under Song-Beverly. This was error. Magnuson-Moss supplements California law of warranty and establishes a cause of action under the federal act for breach of written warranty. Plaintiff's count under Magnuson-Moss for breach of written warranty was based on the Commercial Code, which provides a remedy for

13

breach of express warranty. Contrary to defendant's argument, an express warranty as defined in Commercial Code section 2313, subdivision (1)(a) includes a written commitment to repair goods to conform to an affirmation or promise. (*Seely v. White Motor Co.* (1965) 63 Cal.2d 9, 13; *Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 217.) Unlike her count for breach of express warranty under Song-Beverly, plaintiff's count for breach of written warranty under Magnuson-Moss and the Commercial Code does not require proof of a defect that substantially impaired the use, value, or safety of a vehicle.

2.      *The Trial Court's Refusal to Instruct on Breach of Written Warranty Under Magnuson-Moss and the Commercial Code Was Error*

A party is entitled to have the jury instructed on each viable legal theory supported by substantial evidence if the party requests a proper instruction. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) "The refusal of a proper instruction is prejudicial error only if ' "it seems probable" that the error "prejudicially affected the verdict." [Citations.]' [Citation.] '[W]hen deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled. [Fn. omitted.]' [Citation.]" (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 750, quoting *Soule*, *supra*, at pp. 580-581.) We independently review claims of instructional error viewing the evidence in the light most favorable to the appellant. (*Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 526; *Alcala v. Vazmar Corp.* (2008) 167 Cal.App.4th 747, 754.)

14

A court may refuse a proposed instruction that is erroneous, misleading, or otherwise improper and ordinarily has no duty to modify a proposed instruction in a civil case. (*Shaw v. Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 158; *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 684-685.) This general rule is inapplicable, however, if the inaccuracy is minor and easy to correct and the failure to do so would leave the jury inadequately instructed on an important issue. (*Veronese v. Lucasfilm Ltd.* (2012) 212 Cal.App.4th 1, 24; *Logacz v. Limansky* (1999) 71 Cal.App.4th 1149, 1159.)

The essential elements of a cause of action under the Commercial Code for breach of an express warranty to repair defects are (1) an express warranty (Com. Code, § 2313) to repair defects given in connection with the sale of goods; (2) the existence of a defect covered by the warranty; (3) the buyer's notice to the seller of such a defect within a reasonable time after its discovery (*id.*, § 2607, subd. (3)(A)); (4) the seller's failure to repair the defect in compliance with the warranty; and (5) resulting damages (*id.* §§ 2714, 2715; *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 145). (Cf. *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 415-416; see CACI No. 1230.) A cause of action for breach of written warranty under Magnuson-Moss also requires a written warranty as defined in the federal act (discussed *ante*). (15 U.S.C. §§ 2310(d)(1), 2301(6).)

Plaintiffs' proposed special instructions Nos. 27 and 34 covered each of the elements in dispute (the third element listed above apparently is undisputed), although some modifications would be appropriate to ensure that each of the elements that we

15

have set forth is clearly stated, including the requirements of a defect *covered by the warranty* and defendant's failure to repair *such a defect*. We conclude that the need to make such minor modifications cannot justify the trial court's refusal to instruct on an important theory of recovery.

3. *The Instructional Error Was Not Prejudicial*

The only count submitted to the jury was a count for breach of express warranty under Song-Beverly in which plaintiff sought to recover the purchase price paid less the value of use. The jury likely understood the language "substantially impaired [the vehicle's] use, value, or safety" with this remedy in mind. Plaintiff's counsel argued in closing that the engine noises indicated a defect in materials or workmanship and justified a refund. Defendant's counsel argued in closing that the vehicle never had any performance problems and that there was no evidence of any engine defect.

The evidence showed that defendant made several repairs in a timely manner, including repairs to components inside the cabin, replacing the alternator drive belt and tensioner, replacing the power steering pump, repairs to the steering and air conditioning systems, and other repairs. There was conflicting evidence as to whether any abnormal noises persisted and, if any, their significance.

Plaintiff testified that the noises continued after May 2011, but she never returned to the dealership. She therefore cannot claim that defendant breached the limited warranty after that date. Instead, she is limited to claiming that a defect in materials or workmanship existed in May 2011, or earlier, and that defendant had a reasonable opportunity to correct the problem but failed to do so.

16

Plaintiff argues on appeal that the jury, if properly instructed, might have found that defendant breached the limited warranty by failing to repair defects that did not substantially impair the vehicle's use, value, or safety. But plaintiff's theory of recovery throughout the trial with respect to both her counts for breach of express warranty under Song-Beverly and breach of written warranty under Magnuson-Moss and the Commercial Code was that engine noises indicated that the engine was defective and required replacement. Plaintiff sought damages under the Commercial Code for the impaired value of the vehicle purportedly caused by a defective engine, and did not seek damages caused by only engine noises. The jury's finding that there was no defect that a reasonable person in plaintiff's position would believe substantially impaired the vehicle's use, value, or safety necessarily implies a complete rejection of plaintiff's theory of liability asserted at trial. Plaintiff did not seek recovery for the failure to repair defects that did not substantially impair the vehicle's use, value, or safety, so it is unlikely that the jury, if properly instructed, would have awarded damages on such a theory. We therefore conclude on this record that plaintiff has failed to show that the refusal of her proposed instructions was prejudicial.

### *DISPOSITION*

The judgment is affirmed.  Defendant is entitled to recover its costs on appeal.


### *CERTIFIED FOR PUBLICATION*


CROSKEY, J.

WE CONCUR:


KLEIN, P. J.


KITCHING, J.

18