Filed 3/15/24

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAMIEN T. DAVIS et al., | D083006 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. CVRI2203733) |
| NISSAN NORTH AMERICA, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Riverside County, Eric A. Keen, Judge.  Affirmed.

Shook Hardy & Bacon, Amir M. Nassihi, Nalani L. Crisologo and Andrew L. Chang for Defendants and Appellants.

The Lemon Pros, Arash Khorsandi, Michael Saeedian and Christopher Urner for Plaintiffs and Respondents.


Defendants Nissan North America, Inc., a vehicle manufacturer, and Nissan of San Bernardino, an authorized vehicle repair facility (collectively "Nissan" or "Nissan defendants"), challenge an order denying their motion to compel arbitration of claims asserted against them by plaintiffs Damien T. Davis and Johnetta H. Lane, buyers of a new Nissan vehicle with an

allegedly defective transmission. The trial court ruled that the Nissan defendants, who were not parties to the sale contract between plaintiffs and the dealership containing the arbitration clause, could not invoke the clause to compel arbitration based on the doctrine of equitable estoppel. In so ruling, the trial court declined to apply the holding of *Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486 (*Felisilda*). Since the trial court's ruling, four published Court of Appeal decisions have rejected *Felisilda* and the Supreme Court has granted review to resolve the conflict. We now join the more recent line of authorities. Accordingly, we affirm the order denying Nissan's motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Sale Contract and Warranty*

Plaintiffs signed a retail installment sale contract to buy a new Nissan Altima from Riverside Nissan, a vehicle dealership not a party to this lawsuit. The contract identified the plaintiffs as "Buyer" and "you" and identified Riverside Nissan as "Seller," "we," and "us." The sale contract was on a standard form created by the Reynolds and Reynolds Company and designated as Form No. 553-CA-ARB. The Nissan defendants were not parties to the sale contract.

The contract contained the following provision about warranties:

> "If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

> "This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed."

2

The contract also contained the following arbitration provision:

> "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
>
> [¶] . . . [¶]
>
> "Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of this dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."

Defendant Nissan North America, Inc. manufactured the car plaintiffs bought and provided a written manufacturer's warranty.[1] Nissan North America, Inc. authorizes certain facilities, including defendant Nissan of San Bernardino, to repair defects in its vehicles that arise during the warranty period, provides training to such facilities on how to make repairs, and reimburses those facilities for the repair costs.

Plaintiffs' complaint alleges that Nissan's warranty was "attached to the vehicle itself . . . at the time of manufacturing and/or distribution," it did "not arise out of the Purchase of the vehicle," and its benefits apply "to any registered owner of the vehicle regardless of whether the vehicle is

---

[1] The record does not include a copy of the warranty. "Warranties made in connection with the sale of new motor vehicles are usually to the effect that the vehicle will be free from defects for a specified period of time or miles of use." (4 Witkin, Summary of Cal. Law (11th ed. 2023) Sales, § 64.)

purchased, leased, or provided as a gift to the owner and irrespective of any terms of the Purchase contract."

B.    *Vehicle Defects and Repair Attempts*

Plaintiffs repeatedly experienced a lack of power and acceleration while driving their Altima and took it four times to Nissan of San Bernardino for repairs.  On the first three occasions, plaintiffs were told no defects were found, but on the last, they were told the transmission was defective and needed to be replaced.

C.    *Complaint*

Based on the Altima's defective transmission, plaintiffs sued the Nissan defendants, but not the dealership.  They asserted the following three claims against Nissan North America, Inc. for violations of the Song-Beverly Consumer Warranty Act (Song-Beverly Act or Act; Civ. Code, § 1790 et seq.): (1) breach of express warranty; (2) breach of implied warranty; and (3) breach of duty to provide service or repair to conform the vehicle to manufacturer warranties (Civ. Code, § 1793.2, subd. (b)).  Plaintiffs also asserted a claim of negligent repair against both Nissan defendants.  They prayed for damages, rescission of the sale contract, restitution, civil penalty, interest, costs, and attorney fees.

D.    *Motion to Compel Arbitration*

The Nissan defendants moved to compel arbitration and stay the action.  (Code Civ. Proc., §§ 1281.2, 1281.4.)  Relying on *Felisilda, supra*, 53 Cal.App.5th 486, they argued that even though they were not parties to the sale contract containing the arbitration clause, they could compel arbitration under the doctrine of equitable estoppel because plaintiffs' claims were based on warranties they received as part of the sale.  They also argued that they

4

could enforce the arbitration clause as third-party beneficiaries of the sale contract.

Plaintiffs opposed the motion. In relevant part, they argued that the doctrine of equitable estoppel did not apply because their claims did not arise out of or depend on the sale contract, and the Nissan defendants were not third-party beneficiaries entitled to enforce the arbitration clause of the sale contract.

The trial court denied the motion to compel arbitration. Relying on the Ninth Circuit's decision in *Ngo v. BMW of North America, LLC* (9th Cir. 2022) 23 F.4th 942 (*Ngo*), the court ruled that *Felisilda* did not apply "where the dealership is not a party to the action." The court also found *Ngo* "to be the better reasoned opinion based on the fact that the manufacturer's duty relating to the warranty is independent to the sales contract." The court further noted that the sale contract expressly disclaimed any seller warranties, while also stating that the disclaimer did not affect any warranties " 'the vehicle manufacturer may provide.' " The court concluded that the sale contract thus "treats warranties as a separate provision." The court also ruled that the Nissan defendants were not third-party beneficiaries of the sale contract.

## DISCUSSION

Nissan has expressly abandoned its third-party beneficiary theory on appeal, but argues that the trial court erred by declining to apply *Felisilda* and refusing to compel arbitration based on equitable estoppel. Plaintiffs contend that the trial court's equitable estoppel ruling was correct and urge us to follow more recent caselaw rejecting *Felisilda*. Recognizing that this

issue is currently pending before the Supreme Court, we agree with the more recent authorities.[2]

A.    *Standard of Review*

Because the material facts are undisputed, we review de novo whether the trial court correctly applied the doctrine of equitable estoppel in denying Nissan's motion to compel arbitration. (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 226, fn. 9 (*Goldman*).)

B.    *Governing Law on Equitable Estoppel*

Although there is a strong public policy in favor of arbitration, there is no policy compelling anyone to accept arbitration of controversies which they have not agreed to arbitrate. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.) Because arbitration is a matter of contract, the basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it—with limited exceptions. (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.)

One such exception is the doctrine of equitable estoppel. Equitable estoppel precludes a party from asserting rights they otherwise would have had against another when their own conduct renders assertion of those rights inequitable. (*Goldman, supra*, 173 Cal.App.4th at p. 220.) As applied in the arbitration context, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement. In other words, a signatory to an agreement with an arbitration clause cannot 'have it both ways'; the signatory 'cannot, on the one hand, seek

---

[2]    We reject plaintiffs' contention that Nissan forfeited its claims of error by omitting unfavorable facts from the opening brief. The opening brief includes a fair summary of the significant facts. (Cal. Rules of Court, rule 8.204(a)(2)(C).)

to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" (*Ibid.*, internal quotation marks omitted.)

"[T]he *sine qua non* for application of equitable estoppel as the basis for allowing a nonsignatory to enforce an arbitration clause is that the claims the plaintiff asserts against the nonsignatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." (*Goldman, supra,* 173 Cal.App.4th at pp. 217–218.) " '[T]*he plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory . . . is . . . always the sine qua non of an appropriate situation for applying equitable estoppel.*'" (*Fuentes v. TMCSF, Inc.* (2018) 26 Cal.App.5th 541, 552, internal quotation marks omitted.) "This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Goldman*, at p. 221.)

The mere fact that the plaintiff's complaint makes reference to an agreement with an arbitration clause is not enough to establish equitable estoppel. (*Goldman, supra,* 173 Cal.App.4th at p. 218.) Nor is it sufficient that the plaintiff's complaint presumes the existence of a contract that contains an arbitration clause. (*Id.* at p. 231.) The "underlying principle" in all cases is that there must be "*actual reliance* on the terms of the agreement to impose liability on the nonsignatory." (*Ibid.*, italics added.) Actual reliance in this context means that the plaintiff's substantive claims against

7

the non-signatory must be "founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause.*"[3] (*Id.* at p. 219.)

### C.  *Analysis of Equitable Estoppel Issue*

Nissan is not a party to either the vehicle sale contract or the arbitration provision contained within it.  By its terms, the sale contract is solely between "you" (the plaintiffs) and "us" (the dealership) and its arbitration provision applies only to disputes "between you and us or our employees, agents, successors or assigns."  Nissan concedes that it is not a party to the contract or its arbitration clause—but argues that it is nevertheless entitled to compel arbitration under the Third District's 2020 decision on equitable estoppel in *Felisilda*.

In *Felisilda*, the plaintiffs purchased a vehicle through the dealership. (*Felisilda, supra*, 53 Cal.App.5th at pp. 489–491.)  The plaintiffs signed the same form sale contract with the dealership as the one at issue here, including the arbitration clause.  (*Id.* at p. 490.)  After their vehicle

---

[3]    In the arbitration context, California courts have not applied the four traditional elements for equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely upon the conduct to his injury.  (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.)  In the absence of these traditional elements, including detrimental reliance, other jurisdictions have rejected such an arbitration-specific version of equitable estoppel.  (See *Santich v. VCG Holding Corp.* (Colo. 2019) 443 P.3d 62, 65–66; *Hirsch v. Amper Financial Services, LLC* (N.J. 2013) 71 A.3d 849, 857–860; *Warciak v. Subway Rests., Inc.* (7th Cir. 2018) 880 F.3d 870, 872 [applying Illinois law]; *Scheurer v. Fromm Family Foods LLC* (7th Cir. 2017) 863 F.3d 748, 752–753 [applying Wisconsin law].)  We do not decide this issue because it has not been briefed by the parties.

experienced mechanical problems, the plaintiffs sued both the dealership and the manufacturer, asserting a single claim for violation of the Song-Beverly Act based on express warranties. (*Id*. at pp. 490–491.)

Invoking the arbitration clause of the sale contract, the dealership moved to compel arbitration of the entire matter, including the claim against the nonsignatory manufacturer. (*Felisilda, supra*, 53 Cal.App.5th at p. 491.) The manufacturer filed a notice of non-opposition. (*Ibid*.) After the trial court compelled arbitration of the claims against both the dealership and the manufacturer, the plaintiffs eventually appealed from a judgment confirming the arbitration award, arguing that the trial court had erred by compelling arbitration of the claim against the manufacturer. (*Id*. at pp. 489, 492.)

Applying the doctrine of equitable estoppel, the Third District ruled that the trial court had correctly compelled arbitration of the claim against the nonsignatory manufacturer. (*Felisilda, supra*, 53 Cal.App.5th at pp. 495–499.) The court relied heavily on the language of the arbitration clause requiring arbitration of disputes between the plaintiffs and the dealership arising out of or relating to the "*condition of this vehicle*, this contract or any resulting transaction or relationship (*including any such relationship with third parties who do not sign this contract*) . . . ." (*Felisilda,* at pp. 490, 496–498.) The court concluded: "Because the [plaintiffs] expressly agreed to arbitrate claims arising out of the condition of the vehicle – even against third party nonsignatories to the sales contract – they are estopped from refusing to arbitrate their claim against [the manufacturer]." (*Id*. at p. 497; see also *ibid*. ["the arbitration provision in this case provides for arbitration of disputes that include third parties so long as the dispute pertains to the condition of the vehicle"]; *id*. at p. 498 [stating that the arbitration provision included "an express extension of arbitration to claims involving third parties

9

that relate to the vehicle's condition"]; *ibid.* [stating that plaintiffs' "agreement to the sales contract constituted express consent to arbitrate their claims regarding vehicle condition even against third parties"].)

As noted, the trial court here declined to apply *Felisilda.* Since the trial court's decision, four published California Court of Appeal decisions (including one from another panel of the Third District) have rejected the holding of *Felisilda* and the Supreme Court has granted review to resolve the conflict. (*Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, review granted July 19, 2023, S279969 (*Ford Motor*); *Montemayor v. Ford Motor Co.* (2023) 92 Cal.App.5th 958, review granted Sept. 20, 2023, S281237 (*Montemayor*); *Kielar v. Superior Court* (2023) 94 Cal.App.5th 614, review granted Oct. 25, 2023, S281937 (*Kielar*); *Yeh v. Superior Court* (2023) 95 Cal.App.5th 264, review granted Nov. 15, 2023, S282228 (*Yeh*).) Each of these cases involved the same form vehicle sale contract at issue here and in *Felisilda.* Each unanimously declined to compel arbitration of warranty-related claims brought against a vehicle manufacturer under the Song-Beverly Act.

We agree with the holdings of these recent cases and adopt their reasoning as our own. "Equitable estoppel would apply if the plaintiffs had sued [Nissan] based on the terms of the sale contract yet denied [Nissan] could enforce the arbitration clause in that contract." (*Ford Motor, supra*, 89 Cal.App.5th at p. 1334, review granted.) But equitable estoppel does not apply here because plaintiffs are not relying on the terms of the sale contract to impose liability on Nissan. (*Id.* at pp. 1335–1336.) Plaintiffs' complaint does not allege that Nissan breached any obligations under the sale contract between them and the dealership. Rather, the complaint alleges violations of manufacturer warranties under the Song-Beverly Act and a related tort

10

claim. Under California law, manufacturer warranties that accompany the sale of a vehicle without regard to the substantive terms of the sale contract between the buyer and the dealer are independent of the sale contract. (*Ford Motor*, at pp. 1334–1336; *Montemayor, supra*, 92 Cal.App.5th at p. 969, review granted; *Kielar, supra*, 94 Cal.App.5th at pp. 620–621, review granted; *Yeh, supra*, 95 Cal.App.5th at p. 274, review granted.)

As in each of these recent cases, the sale contract between plaintiffs and the dealership includes "no warranty, nor any assurance regarding the quality of the vehicle sold, nor any promise of repairs or other remedies in the event problems arise." (*Ford Motor, supra*, 89 Cal.App.5th at p. 1335, review granted.) "To the contrary, the sale contract[] disclaim[s] any warranty on the part of the dealer[], while acknowledging no effect on 'any warranties covering the vehicle that the vehicle manufacturer may provide.' " (*Ibid.*) "This differentiation . . . demonstrates an intent to distinguish and distance the dealership's purchase agreement from any warranty that [Nissan] 'may' provide." (*Jurosky v. BMW of N. Am.* (S.D.Cal. 2020) 441 F.Supp.3d 963, 970 [construing identical disclaimer language under California law]; see also *Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1131 (*Kramer*) [same under California law]; *Caine v. BMW of N. Am., LLC* (S.D.Cal. 2021) 596 F.Supp.3d 1244, 1251 [same under California law].)

Nissan nevertheless contends that equitable estoppel applies because manufacturer warranties are considered part of a retail sale contract under Division 2 of the California Uniform Commercial Code (UCC) (Cal. U. Com. Code, § 2101 et seq.). Other courts have already rejected similar arguments based on the UCC. (*Ford Motor, supra*, 89 Cal.App.5th at p. 1336 [rejecting manufacturer's argument that equitable estoppel applied because "warranty claims are treated *like* contract claims" under the UCC], review granted; *Yeh,*

11

*supra*, 95 Cal.App.5th at p. 275 [holding that "the enactment of the California Uniform Commercial Code did not change existing law that manufacturer warranties can exist separate from a sales contract"], review granted.) We do as well.

Division 2 of the UCC governs the relationship of the parties to a sale, and its warranty provisions are limited to warranties given directly by the seller to the buyer. The UCC's express warranty provision by its terms applies only to "[e]xpress warranties *by the seller* . . . ." (Cal. U. Com. Code, § 2313, subd. (1)(a), italics added.) "The section gives a cause of action only against 'the seller.'" (White, et al., Uniform Commercial Code (6th ed. 2023) § 10:10.) The UCC defines a "seller" as "a person who sells or contracts to sell goods." (Cal. U. Com. Code, § 2103, subd. (1)(d).)

As the court noted in *Yeh*, *supra*, 95 Cal.App.5th at page 275 (review granted), the official UCC comment to the express warranty provision explicitly states: "Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. They may arise in other appropriate circumstances . . . . [T]he matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise." (Cal. U. Com. Code, com. 2 to § 2313; see also *id.*, § 1103, subd. (b) [principles of law and equity supplement UCC].)

This comment makes clear that although the UCC's express warranty provision applies only to a seller in privity with the buyer, the UCC does not disturb non-UCC case law allowing a buyer to sue a manufacturer for breach

12

of express warranty even in the absence of privity.[4] (See, e.g., *In re Allergan BIOCELL Textured Breast Implants Prods. Liab. Litig.* (D.N.J. 2021) 537 F.Supp.3d 679, 742 ["though privity is required for asserting UCC-based express warranty claims," plaintiffs could still "assert non-UCC-based express warranty claims" against manufacturer under Arizona UCC]; see also *Westport Marina, Inc. v. Boulay* (E.D.N.Y. 2010) 783 F.Supp.2d 344, 354, fn. 6 [New York UCC did not disturb pre-UCC case law allowing express warranty claim against manufacturer in absence of privity]; *Sheppard v. Revlon, Inc.* (Fla.Dist.Ct.App. 1972) 267 So.2d 662, 664 [even in absence of sale governed by Florida UCC, non-UCC warranty claim against manufacturer could be asserted].)[5]

Such manufacturer warranties "arise[] independently of a contract of sale between the parties" and "are the product of common-law decisions that have recognized them in a variety of situations." (*Greenman v. Yuba Power*

---

[4] Although we have discovered no California case on point, cases from other jurisdictions generally hold that (1) a seller is not bound by a manufacturer's express warranty unless the seller has specifically adopted the warranty as its own, and (2) the seller does not adopt a manufacturer warranty merely by delivering it to the buyer. (Crockett, The Law of Product Warranties (2023) § 4:34; see, e.g., *Frank Griffin Volkswagen v. Smith* (Fla.Dist.Ct.App. 1992) 610 So.2d 597, 601; *Norman Gershman's Things to Wear, Inc. v. Mercedes-Benz of North America, Inc.* (Del.Super.Ct. 1989) 558 A.2d 1066, 1073; *Lytle v. Roto Lincoln Mercury & Subaru, Inc.* (Ill.Ct.App. 1988) 521 N.E.2d 201, 205; *Thorpe v. Hammons Sheet Metal Co.* (Mo.Ct.App. 1999) 991 S.W.2d 157, 158; *Gilliam v. Indiana National Bank* (Ala.Civ.App. 1976) 337 So.2d 352, 354; *Import Motors, Inc. v. Matthews* (Tex.Civ.App. 1977) 557 S.W.2d 807, 810.)

[5] Because the UCC is a uniform act, we may look to its official comments and decisions from other UCC jurisdictions for guidance to interpret its provisions uniformly. (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 978.)

13

*Products, Inc.* (1963) 59 Cal.2d 57, 61 (*Greenman*); accord, *Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints v. Cavanaugh* (1963) 217 Cal.App.2d 492, 514 (*Cavanaugh*); see also *Seely v. White Motor Co.* (1965) 63 Cal.2d 9, 14 (*Seely*) ["no privity of contract was required" for express warranty claim]; *Smith v. Gates Rubber Co. Sales Division, Inc.* (1965) 237 Cal.App.2d 766, 768 [same].)

The *implied* warranty provisions of the UCC also apply only to a merchant or seller in privity with the buyer. (Cal. U. Com. Code, § 2314 [implied warranty of merchantability]; *id.*, § 2315 [implied warranty of fitness for particular purpose]; *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 138–139; *Mega RV Corp. v. HWH Corp.* (2014) 225 Cal.App.4th 1318, 1333, fn. 11.) Thus, absent direct dealings between the manufacturer and purchaser, manufacturer warranties (express or implied) generally fall outside the scope of the UCC and are governed by other provisions of law.[6] For this reason, we reject Nissan's argument that the UCC treats them as part of the sale contract.

We find unpersuasive Nissan's argument that a manufacturer warranty is part of the sale contract because the UCC defines a "contract" to mean "the total legal obligation that results from the parties' agreement as determined by this code and as supplemented by any other applicable laws." (Cal. U. Com. Code, § 1201, subd. (b)(12).) Read in context, this definition of a "contract"—which includes the phrase "the parties' agreement"—clearly refers to the legal obligations of the contracting parties, not strangers to the

---

6    On the other hand, when a buyer purchases a product directly from the manufacturer, then the manufacturer is also the seller and the manufacturer warranties would therefore be part of the sale contract under the UCC. (See, e.g., *Weinstat v. Dentysply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1225–1231 [applying UCC to express warranty claims of dentists who purchased dental device from manufacturer].)

contract. Like its predecessor, Division 2 of the UCC (Cal. U. Com. Code, § 2101 et seq.) "deals with the rights of the parties to a contract of sale or a sale." (*Greenman, supra*, 59 Cal.2d at pp. 60–61 [discussing former Uniform Sales Act]; see Cal. U. Com. Code, § 1201, subd. (b)(26) [" 'Party,' as distinguished from 'third party,' means a person that has engaged in a transaction or made an agreement subject to this code."]; Cal. U. Com. Code, com. to § 2106 (2022 update) [discussing UCC term "contract for sale" in terms of "the rights of the parties"].) Here, the Nissan defendants were not parties to the contract or the vehicle sale. Nissan cites no authority (from any UCC jurisdiction) supporting its assertion that the UCC's definition of a contract includes the warranty obligations of a product manufacturer who is not even a party to the contract.

We have no quarrel with Nissan's argument that a seller's warranty to a buyer is treated as part of the parties' sale contract under the UCC, even if it is not included as part of the written contract. (See, e.g., *A&M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 495 [seller's warranty to buyer was part of contract thus supporting award of attorney fees under Civil Code section 1717 even though seller's warranty was not included in written contract].) We also agree that the sale contract includes obligations imposed on a seller as a matter of law, such as the implied warranty of merchantability. (Cal. U. Com. Code, § 2314.) But Nissan's authorities do not establish that the terms of a sale contract include obligations of a non-party to the transaction, such as "when a manufacturer provides an independent warranty, the situation presented here." (*Yeh, supra*, 95 Cal.App.5th at p. 276, review granted.) Although a buyer may receive a manufacturer's warranty as a result of a purchase from a dealership, nothing

15

in the UCC suggests that this automatically makes the manufacturer's warranty a part of the sale contract between the buyer and the dealership.

Though not cited by Nissan, the dissent contends that the Supreme Court in *Seely* treated a vehicle manufacturer's warranty as part of the buyer's sale contract with the dealership. We disagree. The primary holding in *Seely* was that damages for lost profits and the purchase price of the vehicle were recoverable in an action for breach of express warranty against the manufacturer. (*Seely, supra*, 63 Cal.2d at pp. 13–14.) In deciding this damages issue, the court noted that language appearing on the printed purchase order form—stating that the manufacturer warranted the vehicle to be free from defects—met the statutory definition of an express warranty under the former Uniform Sales Act. (*Id*. at p. 13.) The court also concluded that it made no difference whether the consumer was aware that the warranty was made by the manufacturer, rather than the dealer. (*Id*. at pp. 13–14.) We do not read Chief Justice Traynor's opinion in *Seely* as suggesting that a manufacturer's warranty is part of the sale contract with a dealership. It seems unlikely the Supreme Court would have arrived at such a conclusion without mentioning its own statement from two years earlier (in a unanimous decision also authored by then-Justice Traynor) that manufacturer warranties "arise[] independently of a contract of sale between the parties."[7] (*Greenman, supra*, 59 Cal.2d at p. 61.)

The substantive claims asserted in plaintiffs' complaint arise under the Song-Beverly Act, not the UCC. The Song-Beverly Act, which applies to sales of consumer goods, was enacted in 1970 "to provide greater protections and

---

[7]    Nor do we agree with the dissent that other Court of Appeal decisions have relied on *Seely* to hold that an express warranty claim against a vehicle manufacturer is governed by the UCC even in the absence of privity. None of the cases cited by the dissent expressly considered or decided the issue.

16

remedies for consumers" than the UCC because the UCC had "proved [to be] 'limited in providing effective recourse to a consumer dissatisfied with a purchase.' " (*Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1303.)  Specifically, the Act "was enacted to address the difficulties faced by consumers in enforcing express warranties . . . .  The Act protects purchasers of consumer goods by requiring specified implied warranties, placing strict limitations on how and when a manufacturer may disclaim those implied warranties, and providing mechanisms to ensure that manufacturers live up to the terms of any express warranty." (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 484.)  The Song-Beverly Act supplements rather than supersedes the UCC, but it prevails over any conflicting provisions of the UCC.  (Civ. Code, § 1790.3.)

In contrast to the UCC, the Song-Beverly Act explicitly governs manufacturer warranties.  (Civ. Code, §§ 1791, subd. (j), 1791.1, subd. (b), 1791.2, subd. (a)(1), 1791.3, 1792, 1792.1, 1793.)  Thus, the Act "applies to new motor vehicle manufacturers who make express warranties." (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 127.)  Moreover, there is "no privity requirement." (*Ibid.*)

The Act provides that every retail sale of consumer goods shall be accompanied by a manufacturer's implied warranty of merchantability unless properly disclaimed.  (Civ. Code, § 1792.)  It further states that if an express warranty is given, the manufacturer "may not limit, modify, or disclaim the implied warranties guaranteed by this chapter to the sale of consumer goods." (*Id.*, § 1793.)  It also imposes service and repair obligations on manufacturers who make express warranties.  (*Id.*, § 1793.3.)  And it provides remedies to any buyer of consumer goods who is damaged by a

17

manufacturer's failure to comply with any obligation under the statute or under an implied or express warranty.[8]  (*Id.*, § 1794.)

Plaintiffs' claims against Nissan under these provisions of the Song-Beverly Act (and their related negligent repair claim) are not privity-based warranty claims arising under the UCC.  Their Song-Beverly claims are not founded on any term of the dealership sale agreement, "but instead seek to recover based upon [Nissan]'s statutory obligations."  (*Yeh, supra*, 95 Cal.App.5th at p. 278, review granted.)  The mere fact that Nissan "provided an express warranty to [plaintiffs] *as a result* of the sale . . . does not mean [its] obligation to provide a nondefective vehicle under its separate express warranty is in any way founded on an obligation imposed by the sales contract or is intertwined with those obligations."  (*Montemayor, supra*, 92 Cal.App.5th at p. 970, fn. omitted, italics added, review granted.)  Equitable estoppel does not apply "merely because the lawsuit was predicated on the bare fact that a vehicle purchase occurred."  (*Murphy v. DirecTV, Inc.* (9th Cir. 2013) 724 F.3d 1218, 1230 [discussing California law]; see also *Goldman, supra*, 173 Cal.App.4th at p. 231 [actual reliance on the terms of the contract is required; merely asserting a claim that presumes the contract's existence is not enough]; *Mattson Technology, Inc. v. Applied Materials, Inc.* (2023) 96 Cal.App.5th 1149, 1156 ["Nor is it sufficient that . . . the controversy would not have occurred but for the existence of the contract, provided the contract

---

8    Though not part of this case, the federal Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.) contains additional provisions governing warranties for consumer products distributed in interstate commerce.  "It requires disclosures in connection with written warranties, regulates the substantive content of warranties, and establishes a federal cause of action for breach of a written or an implied warranty (15 U.S.C. § 2310(d)), among other provisions.  Magnuson-Moss does not substitute federal law for state law of consumer products warranties, but instead supplements state law."  (*Orichian v. BMW of North America, LLC* (2014) 226 Cal.App.4th 1322, 1330.)

is not the basis for the claims against the non-signatory."].)  Because plaintiffs are not relying on any substantive term of the sale agreement to establish Nissan's liability, the inequities that the doctrine of equitable estoppel was designed to address are not present.

Like the court in *Felisilda*, Nissan relies on the parenthetical language of the arbitration clause referring to nonsignatory third parties.  As written, however, this parenthetical appears as part of the identification of the *types* of disputes "between you [the buyers] and us [the dealership]" that are subject to arbitration.  It includes within its scope any such dispute "between you and us" that arises out of the sale "or any resulting transaction or relationship (*including any such relationship with third parties who do not sign this contract*)."  (Italics added.)  Based on its plain meaning, we agree with the *Ford Motor* line of cases "that this language does not show 'consent by the purchaser to arbitrate claims with third party nonsignatories' " and instead describes "the *subject matter* of claims the purchasers and dealers agreed to arbitrate."  (*Yeh, supra*, 95 Cal.App.5th at p. 278, review granted, quoting *Ford Motor, supra*, 89 Cal.App.5th at pp. 1334–1335, review granted; accord, *Montemayor, supra*, 92 Cal.App.5th at p. 971, review granted; *Kielar, supra*, 94 Cal.App.5th at p. 621, review granted.)

Even if we were to accept Nissan's interpretation of this parenthetical language, however, it would still only be relevant to a third-party beneficiary theory, which Nissan has expressly disclaimed on appeal.  Nissan does not explain how this language logically supports an equitable estoppel theory— and neither did *Felisilda*.  These are separate and distinct theories for enforcement of an arbitration clause by someone who is not a party to the contract containing it.  The legal requirements for equitable estoppel have nothing to do with third-party beneficiaries.  (See, e.g., *Jarboe v. Hanlees*

19

*Auto Group* (2020) 53 Cal.App.5th 539, 550–555 [separately analyzing the two distinct theories].) In our view, the *Felisilda* court conflated the two by injecting third-party beneficiary principles into its equitable estoppel analysis.

Nissan also relies on the fact that the relief plaintiffs seek in their complaint includes rescission of the contract and revocation of acceptance of the vehicle. As the Ninth Circuit has observed in rejecting the same argument by a vehicle manufacturer, equitable estoppel does not arise solely from the *remedies* the plaintiff seeks in the action. (*Kramer, supra*, 705 F.3d at pp. 1131–1132 [finding no equitable estoppel under California law based on plaintiff's prayer for "revocation of acceptance" of vehicle sale].) Under California's equitable estoppel theory, "[t]he emphasis of the case law is unmistakably on the claim itself, not the relief."[9] (*Ibid*.)

This issue will ultimately be decided by our Supreme Court. There is little more we can add to what other appellate courts have already said about it. We see no inequity in allowing the plaintiffs to pursue their Song-Beverly and tort claims in court. Ultimately, we are persuaded by the more recent decisions holding that a vehicle manufacturer who is not a party to the

---

[9] We also reject Nissan's remaining arguments on appeal for the reasons thoroughly discussed by the court in response to identical arguments made by the vehicle manufacturer in *Yeh*. These include Nissan's reliance on *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, *Hauter v. Zogarts* (1975) 14 Cal.3d 104, and *A. A. Baxter Corp. v. Colt Industries, Inc.* (1970) 10 Cal.App.3d 144, and its arguments concerning *Greenman* and *Cavanaugh*. We agree with *Yeh*'s analysis of these arguments. (*Yeh, supra*, 95 Cal.App.5th at pp. 274–278, review granted.) We also agree with *Montemayor* that the issue presented here does not turn on whether the plaintiffs sued only the manufacturer or both the manufacturer and the dealer. This distinction "does not affect the analysis of whether a cause of action against the manufacturer may be compelled to arbitration." (*Montemayor, supra*, 92 Cal.App.5th at p. 972, review granted.)

dealership sale contract containing an arbitration clause may not compel arbitration under an equitable estoppel theory in these circumstances.

DISPOSITION

The order denying the motion to compel arbitration is affirmed. Respondents are entitled to recover their costs on appeal.

BUCHANAN, J.

I CONCUR:

DO, J.

IRION, Acting P. J., Dissenting.

I disagree with the majority's resolution of this appeal. In my view, a buyer who obtains a manufacturer's warranty as part of the sale of a new car by a dealer and sues the manufacturer and an authorized repair facility for breaching the warranty is equitably estopped to refuse to arbitrate with the manufacturer and facility when the sale contract between the buyer and the dealer contains a provision that would require arbitration had the buyer sued the dealer instead. I would therefore reverse the challenged order.

I

I adopt the majority's summary of the facts and procedure of the case, with the following additional information relevant to my analysis of the equitable estoppel issue.

The manufacturer's warranty that came with the 2018 Nissan Altima respondents bought is not in the record. The warranty information booklet applicable to its 2018 models is available at Nissan North America, Inc.'s Web site. The booklet states on page 5 that Nissan North America, Inc. "warrants all parts of your 2018 Nissan vehicle supplied by Nissan, except for those listed elsewhere under the caption 'WHAT IS NOT COVERED.'" On page 6, it states that "[t]he basic coverage period is 36 months or 36,000 miles, whichever comes first," and the warranty "covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan" subject to specified exceptions.[1]

Respondents also bought an optional service contract with a term of 6 years or 100,000 miles when they purchased the 2018 Altima.

---

[1] *2018 Warranty Information Booklet* <https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/shared/2018/2018-nissan-warranty-booklet.pdf> [as of Mar. 6, 2024], archived at <https://perma.cc/7FPZ-BVQJ>.

## II

Before I reach the equitable estoppel issue, I must address two alternative grounds for affirmance raised by respondents. Neither has merit.

## A

Respondents argue appellants forfeited their claims of error by omitting unfavorable facts from the opening brief. An appellant's opening brief must contain a fair summary of the significant facts, including those unfavorable to appellant. (Cal. Rules of Court, rule 8.204(a)(2)(C); *Perry v. Kia Motors America, Inc.* (2023) 91 Cal.App.5th 1088, 1096.) Appellants' opening brief does so by describing the sale of the Altima to respondents; quoting the relevant portion of the arbitration clause they sought to enforce; and identifying the nature of respondents' claims by citing or quoting allegations of the complaint concerning the warranties that "accompanied" the sale, the defects in the Altima, and the unsuccessful repair attempts. The omissions of which respondents complain—failing to reference an allegation of the complaint that the warranty obligations "attached to the vehicle itself . . . at the time of manufacturing and/or distribution and do not arise out of the [p]urchase of the vehicle" or discovery responses in which Nissan North America, Inc. admitted "a written limited warranty accompanied the [Altima] when it was originally distributed"—did not so misrepresent the nature of the case or mislead this court as to constitute a forfeiture. (See *Perry*, at pp. 1095–1096 [misrepresentation of record may forfeit claim of error]; *Good v. Miller* (2013) 214 Cal.App.4th 472, 477 [brief that misled appellate court "militate[d] sharply against granting [appellant] relief"].)

## B

Respondents argue the arbitration provision of the sale contract was not clear enough to waive their constitutional right to proceed in court with

an action for damages under the Song-Beverly Consumer Warranty Act (Song-Beverly Act; Civ. Code, § 1790 et seq.). Respondents did not make this argument in the superior court, and ordinarily new theories of defense may not be raised on appeal. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907.) In any event, the argument lacks merit. A party may waive the right to pursue a statutory claim for damages in court by agreeing to arbitrate the claim. (*Broughton v. Cigna Healthplans of California* (1999) 21 Cal.4th 1066, 1084; *Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 36; *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1117, fn. 7.) Respondents did so when, by signing the sale contract, they agreed to resolve "**BY ARBITRATION AND NOT IN COURT OR ANY JURY TRIAL**" any claim against Riverside Nissan, including one based on statute, that arises out of or relates to the condition of the Altima they bought, the sale contract, or a "relationship with third parties who do not sign this contract." Thus, had respondents sued Riverside Nissan for violating the Song-Beverly Act, Riverside Nissan could have required respondents to arbitrate. Appellants may do the same *if they are entitled to enforce the arbitration clause*, the issue to which I turn next.

## III

In resolving the equitable estoppel issue presented by this appeal, I first describe the doctrine as it applies generally to enforcement of an arbitration agreement. I then analyze the nature of respondents' claims against appellants. And, finally, I explain why, in my view, those claims fall within the scope of the equitable estoppel doctrine and permit appellants to enforce the arbitration provision of the sale contract against respondents.

3

A

An exception to the general rule that "only a party to an arbitration agreement is bound by or may enforce the agreement" (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 613, fn. omitted) is the doctrine of equitable estoppel, which allows a nonsignatory to a contract to enforce its arbitration clause against a signatory who asserts contract-related claims against the nonsignatory (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 353; *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1287 (*Rowe*); *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 271 (*Boucher*)).  The doctrine is based on the maxim that one "who takes the benefit must bear the burden."  (Civ. Code, § 3521; see *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 84.)  Its purpose is to prevent a signatory from asserting rights under a contract as a basis for claims against a nonsignatory, while simultaneously avoiding the obligation to arbitrate under the contract.  (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 20; *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1714.)  Hence, a signatory to a contract containing an arbitration clause may be estopped to refuse to arbitrate claims against a nonsignatory that "rely on and presume the existence of the contract" (*Boucher*, at p. 269), are "dependent upon" the contract (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239), or " 'are "intimately founded in and intertwined" with the underlying contract obligations' " (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 706 (*Molecular Analytical Systems*)).  "The focus [of the equitable estoppel inquiry] is on the nature of the claims asserted by the plaintiff against the nonsignatory defendant."  (*Boucher, supra*, 127 Cal.App.4th at p. 272.)  I therefore review the allegations of

4

respondents' complaint to determine whether their claims are sufficiently related to the sale contract to estop them from refusing to arbitrate with appellants. (*Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486, 496 (*Felisilda*); *Molecular Analytical Systems, supra*, 186 Cal.App.4th at p. 715.) That review requires no resolution of conflicting evidence and is de novo. (*Duran v. EmployBridge Holding Co.* (2023) 92 Cal.App.5th 59, 65; *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 547; *Molecular Analytical Systems*, at p. 708.)

B

In their complaint, respondents asserted three counts for violations of the Song-Beverly Act against Nissan North America, Inc. The first count alleged breach of "[e]xpress warranties [that] accompanied the [p]urchase of the [Altima] . . . by which NISSAN NORTH AMERICA, INC. undertook to preserve or maintain the utility or performance of [the Altima] or to provide compensation if there was a failure in such utility or performance." (Civ. Code, § 1791.2, subd. (a)(1).)[2] The second count alleged breach of "implied warranties" that "accompanied" the "[p]urchase of the [Altima]," including the implied warranty of merchantability. (Civ. Code, § 1792.) The third count alleged failure to repair the Altima within a reasonable time so as to make it conform to the express warranties that "accompanied" the purchase of the vehicle. (*Id.*, § 1793.2, subd. (b).) Respondents also asserted a fourth count labeled "**Negligent Repair**" against both appellants, in which they alleged they took the Altima to Nissan of San Bernardino to repair defects

---

[2] Respondents did not quote the warranty or attach a copy to their complaint. As I noted earlier, the warranty was of the usual type whereby the manufacturer warranted all vehicle parts and agreed to repair or replace any defects for a specified number of years or miles driven. (See dis. opn., *ante*, pt. I.)

during the warranty period, Nissan of San Bernardino did not repair the defects, and Nissan North America, Inc. failed to exercise reasonable care in supervising and reviewing Nissan of San Bernardino's warranty repair work and ratified and approved its negligent conduct. Respondents sought rescission of the sale contract, restitution of all monies paid for the Altima, damages, a civil penalty, interest, costs, and attorney fees.

The gist of the complaint is that the Altima respondents bought was defective and appellants did not timely repair it to make it comply with the warranties that came with the Altima as part of the sale; and, based on the breaches of the warranties, respondents want to cancel the sale and get their money back. All counts of the complaint "rely upon, make reference to, presume the existence of, and are intertwined with the [warranties]." (*Rowe, supra*, 153 Cal.App.4th at p. 1287.) Therefore, under the doctrine of equitable estoppel appellants may enforce the arbitration clause against respondents *if the warranties were part of the sale contract*.

C

Appellants contend that under the California Uniform Commercial Code (UCC; Cal. U. Com. Code, § 1101 et seq.) and the Song-Beverly Act, the express and implied warranties upon which respondents base their claims against appellants were part of the contract. I agree.

California's version of the UCC applies to sales of goods. (Cal. U. Com. Code, § 2102.) "A 'sale' consists in the passing of title from the seller to the buyer for a price." (*Id.*, § 2106, subd. (1).) " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities [citation] and things in action." (*Id.*, § 2105, subd. (1).) A motor vehicle constitutes goods, the sale of which is

6

governed by the UCC. (*Peckham v. Larsen Chevrolet-Buick-Oldsmobile* (Idaho 1978) 587 P.2d 816, 818; *Sorce v. Naperville Jeep Eagle, Inc.* (Ill.Ct.App. 1999) 722 N.E.2d 227, 232; *Rose v. Epley Motor Sales* (N.C. 1975) 215 S.E.2d 573, 577; *Banks v. Shark Auto Sales LLC* (Ohio Ct.App. 2022) 197 N.E.3d 50, 52; *First Nat. Bank of El Campo, TX v. Buss* (Tex.Ct.App. 2004) 143 S.W.3d 915, 920.)

" 'A present sale,' " such as that involved in this case, is "a sale which is accomplished by the making of the contract." (Cal. U. Com. Code, § 2106, subd. (1).) The UCC defines " '[c]ontract' " as "the total legal obligation that results from the parties' agreement as determined by this code and as supplemented by any other applicable laws" (*id.*, § 1201, subd. (b)(12)); and it defines " '[a]greement' " as "the bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealing, or usage of trade" (*id.*, § 1201, subd. (b)(3)). "The parties' 'total legal obligation' may be a composite of written terms, oral expression and responsibilities implied by law." (*A&M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 495 (*A&M Produce Co.*); accord, *Reyes v. Beneficial State Bank* (2022) 76 Cal.App.5th 596, 619 (*Reyes*).)

The total legal obligation that resulted from the sale of the Altima to respondents included the obligations Nissan North America, Inc. assumed in the express warranty respondents alleged "accompanied" their purchase of the Altima. Obligations that make up a contract under the UCC "include the total mix of terms, conditions and warranties which form the bargain of the parties," and "include[ ] the protection afforded by an express limited warranty given by [a vehicle m]anufacturer and passed on by [a d]ealer." (Warren & Rowe, *The Effect of Warranty Disclaimers on Revocation of Acceptance Under the Uniform Commercial Code* (1986) 37 Ala. L.Rev. 307,

7

326, 327.) "The existence and comprehensiveness of a warranty undoubtedly are significant factors in a consumer's decision to purchase a particular automobile." (*Durfee v. Rod Baxter Imports, Inc.* (Minn. 1977) 262 N.W.2d 349, 357.) "[T]he retailer[']s sale contract [and] the manufacturer's warranty, are so closely linked both in time of delivery and subject matter, that they blended into a single unit at the time of sale. . . . [S]ales are usually made, not only upon the make and model of the automobile, but also upon the assurance of the manufacturer, through its warranty, that the vehicle will conform to the standards of merchantability." (*Volkswagen of America, Inc. v. Novak* (Miss. 1982) 418 So.2d 801, 804; accord, *Fode v. Capital RV Center, Inc.* (N.D. 1998) 575 N.W.2d 682, 687.) Hence, a vehicle manufacturer's "warranty provided as part of the contract of sale . . . is part of the benefit of the bargain between the parties" (*Thiedemann v. Mercedes-Benz USA, LLC* (N.J. 2005) 872 A.2d 783, 794) and "creates a direct contractual obligation to the buyer" (*Ventura v. Ford Motor Corp.* (N.J.App.Div. 1981) 433 A.2d 801, 812 (*Ventura*); see *Gochey v. Bombardier, Inc.* (Vt. 1990) 572 A.2d 921, 924 ["when a manufacturer expressly warrants its goods, it, in effect, creates a direct contract with the ultimate buyer"]).

Consistent with these principles, the Supreme Court of California treated a vehicle manufacturer's warranty as part of a sale contract in *Seely v. White Motor Co.* (1965) 63 Cal.2d 9, 12 (*Seely*), where the buyer contracted with Southern Truck Sales to buy a truck manufactured by White Motor Company. The manufacturer "included the following promise in the printed form of the purchase order signed by [the buyer]: 'The White Motor Company hereby warrants each new motor vehicle sold by it to be free from defects in material and workmanship under normal use and service, its obligation under the warranty being limited to making good at its factory any

8

part or parts thereof. . . . ' " (*Id.* at p. 13.) Even though the manufacturer, not the seller, made the promise, the Supreme Court held the "promise meets the statutory requirement for an express warranty: 'Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon.' (Civ. Code, [former] § 1732; cf. Com. Code, §§ 2313,[3] 2314.)" (*Seely*, at p. 13; see *Hauter v. Zogarts* (1975) 14 Cal.3d 104, 108, fn. 1, 109, 115–117 (*Hauter*) [manufacturer liable for breach of express warranty under Cal. U. Com. Code, § 2313 based on statement about product safety that accompanied product sold by different entity].) The Supreme Court further held the buyer could recover from the manufacturer for breach of express warranty lost profits and the amount paid on the purchase price, contract-based remedies ordinarily available only against the seller. (*Seely*, at p. 14, citing Civ. Code, former § 1789 & Cal. U. Com. Code, § 2714.)[4]

Subsequent Court of Appeal decisions have cited *Seely* in support of holdings that a vehicle manufacturer's warranty to repair or replace defective parts for a certain number of years or miles, given to a buyer of a new vehicle from a dealership, constitutes an express warranty within the meaning of the UCC. (See *Orichian v. BMW of North America, LLC* (2014) 226 Cal.App.4th 1322, 1326, 1332–1333 (*Orichian*); *Krieger v. Nick Alexander Imports, Inc.*

---

3    "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." (Cal. U. Com. Code, § 2313, subd. (1)(a).)

4    The Civil Code sections the Supreme Court cited were part of the Uniform Sales Act, which was repealed and replaced by the UCC provisions on sales. (*Seely, supra,* 63 Cal.2d at p. 13, fn. 1; see Stats. 1963, ch. 819, § 2.)

(1991) 234 Cal.App.3d 205, 217; see also *Dagher v. Ford Motor Co.* (2015) 238 Cal.App.4th 905, 910–911, 928 (*Dagher*) [noting UCC gave buyer of vehicle from private seller express warranty claim against manufacturer].) An express warranty, of course, is a term of a sale contract. (*Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1200; *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 830 (*Daugherty*); *A. A. Baxter Corp. v. Colt Industries, Inc.* (1970) 10 Cal.App.3d 144, 153; see 4 Witkin, Summary of Cal. Law (11th ed. 2017) Sales § 51, p. 62 ["A warranty is a contractual term concerning some aspect of the sale"].)

The total legal obligation that made up the sale contract also included the implied warranty of merchantability, which respondents alleged in their complaint "accompanied" the sale of the Altima. Such a warranty "arises by operation of law" (*Hauter, supra*, 14 Cal.3d at p. 117) and guarantees the goods sold are "merchantable," i.e., "fit for the ordinary purposes for which such goods are used." (Cal. U. Com. Code, § 2314, subds. (1), (2)(c); see Civ. Code, § 1792 [unless properly disclaimed "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable"].) Since obligations implied by law are part of the total legal obligation that results from a sale, the implied warranty of merchantability is part of the sale contract. (Cal. U. Com. Code, § 1201, subd. (b)(12); *A&M Produce Co., supra*, 135 Cal.App.3d at p. 495.)

The sale contract itself acknowledges the existence of these warranties by negative implication. The contract addresses the subject of warranties, under the heading "WARRANTIES SELLER DISCLAIMS," as follows: "*If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract*, the Seller makes no

10

warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.  [¶]  *This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.*"  (Boldface omitted; italics added.)  "Because a disclaimer . . . is inconsistent with an express warranty, words of disclaimer . . . give way to words of warranty unless some clear agreement between the parties dictates the contrary relationship."  (*Hauter, supra*, 14 Cal.3d at p. 119; see *Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1229 (*Weinstat*) ["Any affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement."].)  A manufacturer that gives an express warranty with respect to consumer goods may not disclaim the implied warranty of merchantability.  (Civ. Code, § 1793.)  The warranties thus prevail over the disclaimer in this case because respondents received an express warranty from Nissan North America, Inc. and bought a service contract as part of their purchase of the Altima, and therefore the condition for disclaimer of warranties italicized above was not satisfied.  (See *Dones v. Life Ins. Co. of North America* (2020) 55 Cal.App.5th 665, 677 [conditional contractual right does not accrue unless condition occurs].)  Rather than disclaiming all warranties, as the majority asserts (maj. opn., *ante*, p. 11), erroneously in my view, the sale contract here acknowledged the express and implied warranties and effectively incorporated them by reference.

Respondents' claims against appellants assume the warranties arose out of the sale contract.  The Song-Beverly Act gives a "buyer" a cause of action for breach of an express or implied warranty.  (Civ. Code, § 1794, subd. (a).)  As pertinent to this case, a buyer is a party who purchases or contracts to purchase "consumer goods," i.e., a new product to be used

11

"primarily for personal, family, or household purposes." (*Id.*, § 1791, subds. (a), (b); Cal. U. Com. Code, § 2103, subd. (1)(a); Black's Law Dict. (11th ed. 2019) p. 249.) The Act defines " '[e]xpress warranty' " as "[a] written statement *arising out of a sale* to the consumer of a consumer good pursuant to which the manufacturer . . . undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." (Civ. Code, § 1791.2, subd. (a)(1), italics added.) Thus, "the Legislature apparently conceived of an express warranty *as being part of the purchase* of a consumer product." (*Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1258 (*Gavaldon*), italics added.) The Act also prescribes that "every *sale* of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." (Civ. Code, § 1792, italics added.) " 'Sale is a word of precise legal import. It means at all times *a contract* between parties to give and to pass rights of property for money which the buyer pays or promises to pay the seller for the thing bought and sold.' " (*Van Allen v. Francis* (1899) 123 Cal. 474, 479 (*Van Allen*), italics added.) This common law definition "is substantially the same as used in Commercial Code section 2106." (*Rich v. State Bd. of Optometry* (1965) 235 Cal.App.2d 591, 606 (*Rich*).) Since only a warranty that arises out of a sale can support a Song-Beverly Act claim and since a sale *is* a contract, respondents' claims against appellants necessarily rely on the sale contract.

The claims rely on the sale contract in other ways as well. Respondents will need the contract to establish their Altima was new and purchased from a retail seller, so that they may assert rights and obtain remedies under the Song-Beverly Act. (See Civ. Code, §§ 1791, subds. (a), (b) & (*l*), 1794,

12

subd. (a); *Dagher, supra*, 238 Cal.App.4th at p. 917.) They will need the contract to establish the date the warranties took effect, so that they can prove the warranties were in effect when they sought the repairs that appellants allegedly negligently failed to perform. (See Civ. Code, §§ 1791.1, subd. (c) [implied warranty of merchantability expires no later than one year after sale of new consumer goods to buyer], 1793.2 [manufacturer must make repairs during express warranty period]; *Daugherty, supra*, 144 Cal.App.4th at p. 830 ["The general rule is that an express warranty 'does not cover repairs made after the applicable time or mileage periods have elapsed.' "].) On their breach of warranty counts, respondents prayed for damages, which "are dependent upon their affirmance of the existence of a contract to purchase." (*Paularena v. Superior Court* (1965) 231 Cal.App.2d 906, 915.) Respondents alternatively prayed for rescission of the sale contract and restitution, and thus will need the contract to establish its existence and the amount they paid on it. (See Civ. Code, §§ 1791.1, subd. (d), 1793.2, subd. (d)(2), 1794, subd. (b)(1) [buyer may cancel sale contract and recover amount paid when manufacturer fails to repair vehicle during warranty period]; *Music Acceptance Corp. v. Lofing* (1995) 32 Cal.App.4th 610, 621 [on breach of implied warranty of merchantability, buyer may cancel contract and recover amounts paid to purchase goods].)[5]

_____

[5] I disagree with the majority's suggestion that the remedies respondents seek are irrelevant to the equitable estoppel analysis because, the majority says, " '[t]he emphasis of the case law is unmistakably on the claim itself, not the relief.' " (Maj. opn., *ante*, p. 20, quoting *Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1132.) California courts have routinely considered the remedies plaintiffs sought against nonsignatories to a contract containing an arbitration clause in deciding whether the claims were sufficiently related to the contract to support application of equitable estoppel. (See, e.g., *Molecular Analytical Systems, supra*, 186 Cal.App.4th at

In sum, "the sale[ ] contract was the source of the warranties at the heart of this case" (*Felisilda, supra*, 53 Cal.App.5th at p. 496), and all of respondents' claims against appellants "are 'intimately founded in and intertwined' with the underlying contract obligations" (*Boucher, supra*, 127 Cal.App.4th at p. 271). "By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." (*Id.* at p. 272.) " 'Where the equitable estoppel doctrine applies, the nonsignatory has a right to enforce the arbitration agreement.' " (*Felisilda*, at p. 496.) In my view, therefore, appellants may enforce the arbitration clause of the sale contract against respondents.

## IV

In reaching the opposite conclusion, the majority follows *Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, review granted July 19, 2023, S279969 (*Ford Motor*), and other recent Court of Appeal decisions that hold equitable estoppel does not apply in circumstances substantially similar to those of this case.[6] I find unpersuasive the reasoning of those cases and that of the majority in this case.

## A

The primary reason the *Ford Motor* court gave for rejecting application of equitable estoppel was that "California law does not treat manufacturer

---

p. 717; *Rowe, supra*, 153 Cal.App.4th at p. 1287; *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 834–835.)

[6] The other cases are *Montemayor v. Ford Motor Co.* (2023) 92 Cal.App.5th 958, review granted September 20, 2023, S281237 (*Montemayor*); *Kielar v. Superior Court* (2023) 94 Cal.App.5th 614, review granted October 25, 2023, S281937 (*Kielar*); and *Yeh v. Superior Court* (2023) 95 Cal.App.5th 264, review granted November 15, 2023, S282228 (*Yeh*).

14

warranties imposed outside the four corners of a retail sale contract as part of the sale contract." (*Ford Motor, supra*, 89 Cal.App.5th at p. 1335, review granted.)  The cases following *Ford Motor* agreed with that reason (*Yeh, supra*, 95 Cal.App.5th at p. 274, review granted; *Kielar, supra*, 94 Cal.App.5th at p. 621, review granted; *Montemayor, supra*, 92 Cal.App.5th at pp. 968, 972, review granted), and so does the majority in this case (maj. opn., *ante*, pp. 13–14).  I disagree.

Under the UCC, the sale contract is "the total legal obligation that results from the parties' agreement" (Cal. U. Com. Code, § 1201, subd. (b)(12)) and may include warranties not stated in the written agreement (*A&M Produce, supra*, 135 Cal.App.3d at p. 495).  An express warranty included in a sale as a separate document is part of the sale contract.  (*Weinstat, supra*, 180 Cal.App.4th at p. 1230 [UCC "contemplates that affirmations, promises and descriptions about the goods contained in product manuals and other materials that are given to the buyer at the time of delivery can become part of the basis of the bargain, and can be 'fairly . . . regarded as part of the contract' "]; *Murphy v. Mallard Coach Co.* (N.Y.App.Div. 1992) 582 N.Y.S.2d 528, 531 ["the fact that [the manufacturer's warranty] was given to plaintiffs at the time they took delivery of the motor home renders it sufficiently proximate in time so as to fairly be said to be part of the basis of the bargain"].)  So is the implied warranty of merchantability (Cal. U. Com. Code, § 2314, subd. (1); Civ. Code, § 1792), which " '[i]nto every mercantile contract of sale the law inserts' " (*Hauter, supra*, 14 Cal.3d at p. 117).  Further, in enacting the Song-Beverly Act, which supplements the UCC (Civ. Code, § 1790.3; *Dagher, supra*, 238 Cal.App.4th at p. 928), "the Legislature apparently conceived of an express warranty *as being part of the purchase* of a consumer product" (*Gavaldon, supra*,

15

32 Cal.4th at p. 1258, italics added).  Hence, California law *does* treat a manufacturer's warranty that is not stated in the sale contract as part of the contract, where, as here, the warranty is given or arises as part of the sale.

The two decisions *Ford Motor* cited for its conclusion that the manufacturer's warranty was *not* part of the sale contract in that case— *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 and *Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints v. Cavanaugh* (1963) 217 Cal.App.2d 492 (*Ford Motor, supra*, 89 Cal.App.5th at p. 1336, review granted)—do not support that conclusion.  Those decisions concerned claims by plaintiffs for breach of an express warranty that a product manufacturer had given to, respectively, a retailer or a contractor who installed the product.  (*Greenman*, at pp. 59–60 & fn. 1; *Cavanaugh*, at pp. 496, 512–513.)  Each court held the plaintiff was not required to notify the manufacturer of the breach under the now-repealed Uniform Sales Act (Civ. Code, former § 1721 et seq., repealed by Stats. 1963, ch. 819, § 2), because the warranty obligations were not part of a contract of sale between the manufacturer and the plaintiff that was subject to the Uniform Sales Act and instead were imposed on the manufacturer as a matter of law. (*Greenman*, at p. 61; *Cavanaugh*, at pp. 514–515.)  Unlike this case, in which Nissan North America, Inc.'s warranty accompanied the sale of the Altima to respondents, the warranty did not accompany a sale of the product to the plaintiff in either *Greenman* or *Cavanaugh*.  Neither case considered the status of such an accompanying warranty in a transaction governed by the UCC, which did not take effect in California until January 1, 1965.  (Cal. U. Com. Code, § 13101.)  The UCC expands liability beyond that of the former Uniform Sales Act (*Hauter, supra*, 14 Cal.3d at p. 115, fn. 10) and defines a sale contract more broadly than did the Uniform Sales Act (compare Cal. U.

16

Com. Code, § 1201, subd. (b)(12) with Civ. Code, former § 1721, subd. (1)).  As I explained above, under the UCC, as supplemented by the Song-Beverly Act, a manufacturer's express or implied warranty that accompanies a vehicle at the time of sale is part of the "the total legal obligation" that constitutes the sale contract.  (Cal. U. Com. Code, § 1201, subd. (b)(12); see dis. opn., *ante,* pp. 7–10.)

B

I disagree with the majority's assertions that:  (1) the warranty provisions of the UCC "are limited to warranties given directly by the seller to the buyer"; (2) "absent direct dealings between the manufacturer and purchaser, manufacturer warranties (express or implied) generally fall outside the scope of the UCC and are governed by other provisions of law"; and (3) the UCC definition of contract is limited "to the legal obligations of the contracting parties, not strangers to the contract."  (Maj. opn., *ante*, pp. 12, 14–15.) The UCC definition of contract does not exclude legal obligations owed by or to third parties (Cal. U. Com. Code, § 1201, subd. (b)(12)), and we may not impose such an exclusion (*Crespin v. Kizer* (1990) 226 Cal.App.3d 498, 511 ["courts may not insert qualifying provisions not included in the plain language of the statute"]).  Any such exclusion would contradict the official UCC comment quoted by the majority (maj. opn., *ante*, p. 12) that "the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts *or to the direct parties to such a contract*" (Cal. U. Com. Code com., 23A pt. 1 West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 2313, com. 2, p. 296, italics added).  One such line of case law is *Seely, supra*, 63 Cal.2d 9, and the Court of Appeal cases that followed *Seely* in holding a vehicle manufacturer's written

17

warranty to repair or replace defective parts, given to a buyer by a seller at the time of sale, meets the UCC definition of express warranty whose breach may give the buyer UCC remedies against the manufacturer. (See dis. opn., *ante*, pp. 8–10.) The lack of privity between the manufacturer and the buyer does not prevent such a warranty from being part of the bargain between the buyer and the seller or creating obligations to the buyer that are part of the sale contract. (Cal. U. Com. Code, § 1201, subd. (b)(12); *Seely*, at pp. 13–14; *Ventura, supra*, 433 A.2d at pp. 811–812.)

## C

I am not persuaded that the UCC definition of contract is inapplicable, or that respondents' claims are not based on the sale contract, simply because they have asserted rights and sought remedies under the Song-Beverly Act. (See *Yeh, supra*, 95 Cal.App.5th at p. 278, review granted; *Montemayor, supra*, 92 Cal.App.5th at p. 970, review granted; *Ford Motor, supra*, 89 Cal.App.5th at p. 1335, review granted; maj. opn., *ante*, pp. 16–18.) The Song-Beverly Act supplements rather than supersedes the UCC, and its remedies are cumulative. (Civ. Code, §§ 1790.3, 1790.4; *Dagher, supra*, 238 Cal.App.4th at p. 928.) Claims for breach of express or implied warranty are based on contract. (*Reyes, supra*, 76 Cal.App.5th at p. 619; *A&M Produce Co., supra*, 135 Cal.App.3d at p. 495.) "That [respondents] styled their causes of action as violations of [the Song-Beverly Act] does not alter the fact that the primary right at issue was contractual in nature. [Citation.] Similarly, the fact that the California Legislature has seen fit to provide consumers with additional remedies for certain contractual claims does not alter the nature of the action." (*Reyes*, at pp. 619–620.) A party cannot avoid arbitration of claims arising out of a contract containing an arbitration clause

"by framing his claims as merely statutory." (*Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 787.)

D

I also disagree with those courts that have refused to apply equitable estoppel to require a buyer to arbitrate Song-Beverly Act claims against a manufacturer because, in the view of those courts, the claims were based on a sale and not on a sale contract. In the decision on which the superior court relied to deny appellants' motion to compel arbitration, the Ninth Circuit stated: "It is the retail sale—the fact that Ngo bought a BMW—not the purchase agreement, that gives a plaintiff standing to sue under the Song-Beverly Act." (*Ngo v. BMW of North America, LLC* (9th Cir. 2022) 23 F.4th 942, 950.) Similarly, based on the Act's definition of an express warranty as "a written statement arising out of a sale" (Civ. Code, § 1791.2, subd. (a)(1)), the Court of Appeal stated "an express warranty arises out of a sale rather than the underlying contracts" (*Yeh, supra*, 95 Cal.App.5th at p. 277, review granted). As I explained earlier, however (see dis. opn., *ante*, pp. 12–13), "[a] sale *is* a contract." (*Van Allen, supra*, 123 Cal. at p. 479, italics added; accord, *Paykar Construction, Inc. v. Bedrosian* (1999) 71 Cal.App.4th 803, 807; *Rich, supra*, 235 Cal.App.2d at p. 606; *Salada Beach etc. Dist. v. Anderson* (1942) 50 Cal.App.2d 306, 309; Black's Law Dict. (11th ed. 2019) p. 1603; Webster's 3d New Internat. Dict. (2002) p. 2003.) I thus reject as legally unsound the distinction the *Ngo* and *Yeh* courts purported to draw between a sale and a sale contract.

E

Finally, I reject a related contention, unaddressed by the majority, by which respondents attempt to put even more distance between the sale

19

contract and the warranties. They rely on the following allegation of their complaint:

> "The warranty obligations of NISSAN NORTH AMERICA, INC. are attached to the vehicle by Defendant NISSAN NORTH AMERICA, INC. at the time of manufacturing and/or distribution *and do not arise out of the [p]urchase of the vehicle.* The benefits of the warranty to cover the costs of repairs will automatically inure to any registered owner of the vehicle regardless of whether the vehicle is purchased, leased, or provided as a gift to the owner and irrespective of any terms in a [p]urchase contract." (Italics added.)

Respondents argue that because under *Felisilda, supra*, 53 Cal.App.5th at page 496, a court determines from the allegations of the complaint whether claims are founded in or intimately connected with the sale contract, this court must credit the quoted allegation and conclude their claims do not arise out of the contract. I disagree.

The quoted allegation is a mere conclusion of law, which I need not, and do not, accept in deciding whether respondents' claims arise out of the sale contract, especially since it flatly contradicts their allegations the express and implied warranties "accompanied" their purchase of the Altima. (See *McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1182 [court does not accept as true legal conclusion in pleading]; *Williamson v. Pacific Greyhound Lines* (1944) 67 Cal.App.2d 250, 253 [court ascertains nature of action by considering pleading as a whole].) Moreover, the allegation is, in my view, false. Although the warranties pertain to the Altima, the obligations to repair or replace defective parts did not arise until respondents bought it. A "sale is an essential element to impose liability under warranties." (*Shepard v. Alexian Brothers Hosp.* (1973) 33 Cal.App.3d 606, 614; see *Fogo v. Cutter Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 759 ["a sale is ordinarily an

20

essential element of any warranty, express or implied"].)  Respondents may enforce the warranty obligations only because they signed a sale contract to buy the Altima and received the warranties as part of the sale.  (See Civ. Code, § 1794, subd. (a) ["buyer" may file action for damages and equitable relief against manufacturer that fails to comply with express warranty]; *Orichian, supra*, 226 Cal.App.4th at p. 1333 [UCC gives buyer remedies for breach of express warranty "to repair defects given in connection with the sale of goods"].)  Hence, the warranty obligations at issue in this case arose out of the sale contract.  (See *Pacific Indem. Co. v. Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 704 [" 'arising out of' is equated with origination, growth or flow from the event"]; Black's Law Dict. (11th ed. 2019) p. 133 ["arise" means "[t]o originate; to stem (from)" or "[t]o result (from)"].)

I disregard respondents' contrary allegation for another reason.  The allegation, like respondents' decision not to sue the dealership with which they signed the contract to buy the Altima, seems designed to avoid their contractual obligation to arbitrate.  (Cf. *Grigson v. Creative Artists Agency* (5th Cir. 2000) 210 F.3d 524, 530 [plaintiff's commencement of action against nonsignatories after voluntary dismissal of action against signatory that moved to compel arbitration was "a quite obvious, if not blatant, attempt to bypass the agreement's arbitration clause"].)  "No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens."  (*Halperin v. Raville* (1986) 176 Cal.App.3d 765, 772.)  "To allow respondent[s] to assert rights and benefits under the contract and then later repudiate it merely to avoid arbitration would be entirely inequitable."  (*Avina v. Cigna Healthplans of California* (1989) 211 Cal.App.3d 1, 3.)  The purpose of the doctrine of equitable estoppel is "to prevent a party from using the terms or obligations of an agreement as the

basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 221.) I thus disagree with the majority that "the inequities that the doctrine of equitable estoppel was designed to address are not present." (Maj. opn., *ante*, p. 19.)

V

In summary, I would treat the warranties at issue in this case as what they are: obligations arising out of the contract by which respondents bought the allegedly defective Altima. "An express warranty for a new automobile is not provided gratuitously by the manufacturer or seller. The cost of the warranty is included in the cost of the product. The consumer has purchased the warranty along with the car. It is 'part of the benefit of the bargain.' " (*Ford Motor Credit Company, LLC v. Mendola* (N.J.App.Div. 2012) 48 A.3d 366, 376.) Because respondents assert the benefit of the bargain by seeking to hold appellants liable for breaching the warranty obligations, I would hold them to the burden of the same bargain by equitably estopping them from refusing to arbitrate their claims under the arbitration provision of the sale contract. (Civ. Code, § 3521 ["He who takes the benefit must bear the burden."].) I therefore dissent from the majority's decision to affirm the order denying the motion to compel arbitration and to stay the action. I would reverse the order and remand the matter to the superior court with directions to grant the motion.

IRION, Acting P. J.